# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDTRONIC SOFAMOR DANEK USA, INC., et al, <br><br> Plaintiffs, <br><br> vs. <br><br><br><br><br><br><br><br><br> NUVASIVE INC., <br><br> Defendant. <br><br> NUVASIVE INC., <br><br> Counterclaimant, <br><br> vs. <br><br> MEDTRONIC SOFAMOR DANEK USA, INC., et al, <br><br> Counterclaim Defendants. | CASE NO. 08cv1512-MMA(AJB) <br><br> **ORDER DENYING AS MOOT DEFENDANT NUVASIVE, INC.'S MOTION TO STAY LITIGATION ON THE SIX ANTERIOR CERVICAL PLATE PATENTS PENDING *INTER PARTES* REEXAMINATION PROCEEDINGS;** <br><br> [Doc. No. 34] <br><br> **GRANTING PLAINTIFFS MEDTRONIC SOFAMOR DANEK USA, INC., et al's MOTION TO STAY LITIGATION ON U.S. PATENT NO. 7,207,949 PENDING *INTER PARTES* REEXAMINATION PROCEEDINGS** <br><br> [Doc. No. 63] |

This matter is before the Court on Defendant NuVasive, Inc.'s Motion to Stay Litigation on the Six Anterior Cervical Plate Patents Pending *Inter Partes* Reexamination Proceedings [Doc. No. 34] and Plaintiffs Medtronic Sofamor Danek USA, Inc., et al's Motion to Stay Litigation on U.S.

Patent No. 7,207,949 Pending *Inter Partes* reexamination Proceedings [Doc. No. 63]. For the following reasons, the Court **DENIES** Defendant's motion as moot and **GRANTS** Plaintiffs' motion to stay this litigation as to United States Patent No. 7,207,949.

## BACKGROUND

On October 6, 2008, Plaintiffs Medtronic Sofamor Danek USA, Inc., et al ("Medtronic") filed an amended complaint for infringement of nine patents against Defendant NuVasive, Inc. ("NuVasive").[1] NuVasive has asserted counterclaims against Medtronic, including infringement of three patents.[2] The patents-in-suit generally relate to implants, instruments, and methods used to treat the human spine. Medtronic and NuVasive are medical product companies with a shared corporate history and with annual revenues in excess of $250 million.

On March 9, 2009, NuVasive filed applications with the United States Patent and Trademark Office ("USPTO") for *inter partes* reexamination of six of Medtronic's nine patents-in-suit (the '542, '586, '320, '050, '051, and '390 Patents). That same date, NuVasive filed the motion to stay this litigation as to those six patents (referred to by NuVasive as the "Anterior Cervical Plate Patents") pending proceedings in the USPTO. The parties briefed the motion, which the Court took under submission on the papers.

On June 23, 2009, Medtronic filed both an application with the USPTO for *inter partes* reexamination of NuVasive's '949 Patent and the motion to stay this litigation as to the '949 Patent currently pending before the Court. On July 8, 2009, the parties requested that the Court defer the briefing schedule as to Medtronic's motion and defer issuing a ruling as to NuVasive's motion in order to allow the parties time to discuss case management issues with Magistrate Judge Anthony J. Battaglia. The Court granted the request, and the parties subsequently stipulated to litigating this action in phases. Each party chose three patents to litigate in the first phase; Medtronic chose the '973, '933, and '586 Patents, and NuVasive chose the '949, '236, and '362 Patents. Judge Battaglia

---

[1] United States Patent Nos. 5,860,973 (the '973 Patent); 5,772,661 (the '661 Patent); 6,936,051 (the '051 Patent); 6,936,050 (the '050 Patent); 6,916,320 (the '320 Patent); 6,945,933 (the '933 Patent); 6,969,390 (the '390 Patent); 6,428,542 (the '542 Patent); and 6,592,586 (the '586 Patent).

[2] United States Patent Nos. 7,207,949 (the '949 Patent); 7,470,236 (the '236 Patent); and 7,582,058 (the '058 Patent).

issued a case management order regulating discovery and claims construction deadlines, setting an accelerated discovery schedule.

On August 7, 2009, pursuant to Judge Battaglia's order, the parties filed supplemental briefs regarding the status of their pending motions to stay in light of their decision to phase litigation.  On October 27, 2009, the undersigned held a telephonic scheduling/status conference during which counsel for the parties stipulated to a superseding scheduling order to accommodate the recent appearance of new counsel for Medtronic.[3]  During the telephonic conference, the Court solicited further arguments and updates from counsel regarding the status of the motions to stay.  The Court has reviewed all submissions and considered the arguments of counsel, and issues its ruling as follows.

### DISCUSSION

*1.     Relevant Law*

"A patent is presumed to be valid, and this presumption only can be overcome by clear and convincing evidence to the contrary." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1281 (Fed.Cir. 2005) (citation omitted).  However, "[a]ny person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art . . ." 35 U.S.C. § 302.  Reexamination is a procedure by which any person can request that the USPTO reexamine or reevaluate the patentability of an unexpired United States patent. *See* 35 U.S.C. § 302; *see also eSoft, Inc. v. Blue Coat Systems, Inc*., 505 F.Supp.2d 784, 786 (D.Colo. 2007).  "Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002).  Upon reexamination, the patent may be upheld, amended, or invalidated.  35 U.S.C. § 307.  There are two types of reexamination proceedings: *ex parte* and *inter partes*.  An *inter partes* reexamination, in contrast to the *ex parte* reexamination, provides a third party the right to participate in the reexamination process. *Id*. at § 314.  The results of the reexamination are thus binding on the third party requester in any subsequent or concurrent civil action. *Id.* at § 315(c).

---

[3] The first phase of this case remains scheduled to proceed in an expedited manner, with the parties set to appear before this Court for a claims construction hearing in February. *See* October 27, 2009 Superseding Scheduling Order, Doc. No. 97.

Congress created the *inter partes* review to provide an alternative method of resolving disputes, using the expertise of the USPTO. H.Rep. No. 96-1307(I), at 4. *Inter partes* reexamination is intended to provide this review in an "efficient and relatively inexpensive manner." *Id.* As many courts have noted, "[o]ne purpose of the reexamination procedure is to eliminate trial of … issue [s] … or to facilitate trial of … issue[s]." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007) (*quoting Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

"Once an order for *inter partes* reexamination of a patent has been issued under section 313 [35 U.S.C. § 313], the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice." 35 U.S.C. § 318. A district court has the discretion to stay judicial proceedings pending reexamination of a patent. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.Cir.1988); *accord Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed.Cir.2008). In determining whether to grant a stay pending reexamination, courts in this Circuit consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac Corp. v. Teledigital, Inc*., 450 F.Supp.2d 1107, 1110 (N.D.Cal. 2006).

*2.     NuVasive's Motion to Stay*

Based on the current status of the case, the rationale for NuVasive's motion to stay no longer exists, as NuVasive essentially concedes in its supplemental brief. NuVasive originally moved to stay this litigation as to six patents on the same date it filed the applications for reexamination of those patents with the USPTO. Since that date, the USPTO has denied the applications as to the '586 and '320 patents; granted the application and closed reexamination as to the '390 patent; and granted the applications as to the '050 and '051 Patents. Medtronic has chosen to litigate the '973, '933, and '586 Patents during the current phase of this litigation. The '973 and '933 Patents were never the subject of NuVasive's motion and the USPTO has denied the application for

1  reexamination as to the '586 Patent. Accordingly, these patents are not in the midst of *inter partes*
2  reexamination and there is no related concern regarding the impact of reexamination on this case as
3  to these three patents. As such, the Court denies NuVasive's motion as moot.

4      *3.    Medtronic's Motion to Stay*

5  Medtronic's motion to stay relates to the '949 Patent specifically. On August 14, 2009, the
6  USPTO issued two decisions regarding the '949 Patent, granting Medtronic's application for *inter*
7  *partes* reexamination of the patent and rejecting all claims of the '949 Patent on multiple grounds.
8  (*See* Exhibits A & B, Doc. No. 76.) The USPTO found that Medtronic's application for
9  reexamination raised a substantial new question of patentability affecting Claims 1 through 38 of the
10 '949 Patent. NuVasive has chosen to litigate the '949 Patent during the first phase of litigation. As
11 such, Medtronic's motion has not been rendered moot by the parties' procedural stipulation, and
12 Medtronic continues to assert that litigation should not proceed as to the '949 Patent while it is
13 under reexamination by the USPTO.[4] This is the key remaining issue before the Court.[5]

14 The first relevant inquiry regards the stage of this litigation. Despite the fact that the
15 operative complaint was filed over one year ago, this case remains at a relatively early stage of
16 litigation and therefore this factor weighs in favor of a stay as to the '949 Patent. Discovery is
17 ongoing as to the '949 Patent; however, the parties so stipulated notwithstanding the pending
18 motions to stay. The parties entered into the first phase of litigation approximately twelve weeks
19 ago, and although the current scheduling order has set this case on an expedited course to first phase
20 claims construction, the parties have not yet filed their joint chart or opening briefs. No trial date is
21 set and there has been no dispositive motion practice. This factor therefore favors a stay as to the
22 '949 Patent.

23 The second inquiry relates to whether a stay will simplify the issues in question and
24 ultimately the trial of the case. The Federal Circuit has explained that a major "purpose of the

---

[4] The Court notes that in its original moving papers, Medtronic stated that it would "withdraw this motion if NuVasive's Motion to Stay is denied in all respects." (*Medtronic's Motion to Stay*, *Mem. P&As*, 1.) The Court assumes from Medtronic's supplemental briefs and the arguments of counsel during the October 27, 2009 telephonic conference that Medtronic has abandoned this position.

[5] A secondary issue raised in the supplemental briefs is whether the '362 Patent should be litigated at this juncture due to its interconnectedness with the '949 Patent's claims.

1 reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate
2 trial of that issue by providing the district court with the expert view of the PTO (when a claim
3 survives the reexamination proceedings)." *eSoft* at 787 (quoting *Gould*, 705 F.2d at 1342). The
4 USPTO has initially rejected all 38 claims of the '949 Patent. Reexamination is *inter partes*, so a
5 decision will be binding on the parties to this case, likely resulting in simplification of the issues as
6 to the '949 patent. Finally, if the USPTO invalidates some or all claims of the '949 Patent based on
7 prior art, this will have a significant impact on the intrinsic record evidence before the Court during
8 the claims construction process. For these reasons, the second factor, on the balance, weighs in
9 favor of staying the litigation.

10 The third and final factor examines whether a stay would unduly prejudice or present a clear
11 tactical disadvantage to the nonmoving party. A common complaint of prejudice is that the
12 reexamination process could take years to complete, and that the intervening delay will prejudice the
13 nonmoving party's ability to prepare its case due to the fading memories of witnesses and the loss of
14 evidence. However, courts have found that "delay inherent in the reexamination process does not
15 constitute, by itself, undue prejudice." *SKF Condition Monitoring, Inc. v. SAT Corp.*, 2008 WL
16 706851 at *6 (S.D.Cal. 2008). In this case, there is no evidence that either party will suffer undue
17 prejudice as a result of staying this litigation as to the '949 Patent, particularly since the parties
18 stipulated to phased litigation and the case can proceed as to the remaining patents-in-suit.

19 As noted above, the final stay determination is discretionary. Courts have the inherent power
20 to control their own dockets, including the power to stay proceedings. *Ethicon,* 849 F.2d at 1426-27;
21 *Soverain*, 356 F.Supp. 2d at 662. On balance, the relevant factors counsel the Court here to exercise
22 its discretion and impose a stay of this litigation as to the '949 Patent pending reexamination of the
23 patent by the USPTO.[6]

24 / / /
25 / / /
26

27
28 [6] Medtronic's motion addressed the '949 Patent only. Thus, regardless of any attempt by Medtronic through supplemental briefing to restyle its motion in order to seek broader or additional relief, the question of whether to stay this litigation as to any patent other than the '949 Patent, including the '362 Patent, is not properly before the Court.

## CONCLUSION

Based on the foregoing reasons, the Court **DENIES** NuVasive's Motion to Stay [Doc. No. 34] as moot. The Court **GRANTS** Medtronic's Motion to Stay and **ORDERS** this litigation stayed as to United States Patent No. 7,207,949 pending the outcome of *inter partes* reexamination proceedings currently ongoing before the United States Patent and Trademark office.

**IT IS SO ORDERED**.

DATED: November 5, 2009

*[signature]*

Hon. Michael M. Anello
United States District Judge