**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC.,<br>Plaintiff,<br>vs.<br>NUVASIVE, INC.,<br>Defendant. | CASE NO. 3:08-CV-01512-MMA (MDD)<br><br>**JURY INSTRUCTIONS AND VERDICT FORM** |
| NUVASIVE, INC.,<br>Counterclaimant,<br>vs.<br>MEDTRONIC SOFAMOR DANEK USA, INC.<br>Counterclaim Defendant. | |
| AND RELATED COUNTERCLAIMS | |

DATED: ______________________________

______________________________
Hon. Michael M. Anello
United States District Judge

**JURY INSTRUCTIONS**

## 1.0 DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you.

You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**1.1 WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits which are received into evidence; and
3. any facts to which the lawyers have agreed.

## 1.2 WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements and their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**1.3 DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## 1.4 CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**1.5 EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## 1.6 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**1.7 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## 1.8 CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## 1.9 BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**1.10 BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

## 1.11 SUMMARY OF CONTENTIONS

The parties in this case are NuVasive, Inc. ("NuVasive"), Warsaw Orthopedic, Inc. ("Warsaw" or "Warsaw Orthopedic"), and Medtronic Sofamor Danek USA, Inc. Warsaw is asserting three patents against NuVasive, and NuVasive is asserting one patent against Medtronic Sofamor Danek USA.

Specifically, Warsaw contends that NuVasive makes, uses, offers to sell, sells or imports products that infringe claims 24, 41, 42, 57, and 61 of the '973 patent; claims 78, 148, and 167 of the '586 patent; and claims 21, 57 and 66 of the '933 patent. NuVasive denies that it infringes the '933 and '586 patents. NuVasive admits that its accused implants are covered by the '973 patent, but contends that the '973 patent is invalid. Invalidity is a defense to infringement. Therefore, even though the Patent and Trademark Office ("PTO") examiner has allowed the claims of the '973 patent, you, the jury, must decide whether the claims are invalid.

NuVasive contends that Medtronic Sofamor Danek USA infringes claims 1, 5 and 9 of the '236 patent. Sofamor Danek denies that it infringes the '236 patent.

Your job is to decide whether the asserted claims in each patent have been infringed and whether any of the asserted claims in the patents are invalid. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Warsaw or NuVasive as compensation for the infringement.

## 2.0 GLOSSARY OF PATENT AND TECHNICAL TERMS

To assist you in your deliberations, I have included a Glossary of Patent and Technical Terms that identifies terms used in patent matters and gives you a definition of those terms.

### GLOSSARY OF PATENT TERMS

**Claims –** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**File wrapper –** Another term for the "prosecution history" defined later.

**License –** Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder in exchange for a fee called a "royalty" or other types of payment or compensation.

**Office action –** A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Patent and Trademark Office (PTO) –** An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Patent examiners –** Personnel employed by the PTO who review patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the specification adequately describes and enables the claimed invention.

**Prior art –** Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution history –** The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Specification –** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

**Ordinary skill in the art –** It is up to you to decide the level of ordinary skill in the field of the invention. You should consider all of the evidence introduced at trial in making this decision, including: (1) the levels of education and experience of persons working in the field; (2) the types of problems encountered in the field; and (3) the sophistication of the technology.

## 2.1 THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

## 2.2 HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as “claim elements” or “claim limitations.” When a thing meets all of the requirements of a claim, the claim is said to “cover” that thing, and that thing is said to “fall” within the scope of that claim.

In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you. By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

**2.3 INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An “independent claim” sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way the claim “depends” on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

For the ’973 patent, asserted claim 61 is an independent claim, and claims 24, 41, 42 and 57 are dependent claims.

For the ’586 patent, asserted claims 78 and 148 are independent claims, and claim 167 is a dependent claim.

For the ’933 patent, asserted claims 21, 57 and 66 are dependent claims.

For the ’236 patent, asserted claim 1 is an independent claim, and claims 5 and 9 are dependent claims.

## 2.4 CLAIM INTERPRETATION

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make. For any words in the claims for which I have not provided you a definition, you should apply their plain meaning to a person of ordinary skill in the art at the time of the invention.

**a. Claim Constructions for the ’973 Patent**

I instruct you that the preambles of independent claims 1, 35 and 61, which contain the language “a translateral spinal implant for insertion from the lateral aspect of the spine in the disc space between two adjacent vertebrae,” are not limiting. In other words, the preambles do not act as a separate limitation, and you should not consider them as a separate limitation during your deliberations. By that, the Court is not instructing you to ignore the claim language “said implant,” which refers to a “translateral spinal implant.”

(1) The Court construes the term “translateral spinal implant” to mean: “a spinal implant capable of being inserted translaterally.”

With respect to this first construction by the Court, you have heard testimony from experts regarding their opinion and interpretation of the term “capable.” As stated above, the Court found that the preambles of independent claims 1, 35 and 61 are not limiting, and therefore, the Court’s use of the term “capable” cannot be read to impose additional limitations in to the ‘973 Patent, that are not otherwise set forth in the claim language. As with any other term not specifically defined or interpreted by the Court, the term “capable” should be given its plain meaning as understood by one of ordinary skill in the art at the time of the invention.

(2) The Court construes the term “translateral spinal fusion implant” to mean: “a spinal fusion implant capable of being inserted translaterally.”

(3) “length” - this term should be given its plain meaning as understood by one of ordinary skill in the art.

(4) “transverse width of the vertebrae” - this term should be given its plain meaning as understood by one of ordinary skill in the art.

(5) “said implant having a length that is greater than one half the transverse width of the vertebrae” - this term should be given its plain meaning as understood by one of ordinary skill in the art.

(6) “said length being substantially greater than the depth of the vertebrae” - this term should be given its plain meaning as understood by one of ordinary skill in the art.

(7) “a height for contacting each of the two adjacent vertebrae” - this term should be given its plain meaning as understood by one of ordinary skill in the art.

**b. Claim Constructions for the ’586 Patent**

All terms should be given their plain meaning to a person of ordinary skill in the art.

**c. Claim Constructions for the ’933 Patent**

I instruct you that the preambles of independent claims 1, 24 and 56, which include the language “for percutaneous surgery,” are not limiting. In other words, the preambles do not act as a separate limitation, and you should not consider them as a separate limitation during your deliberations.

(1) The Court construes the term “said working channel being enclosed by said first portion and said second portion” to mean: “said working channel being enclosed by said first portion and said second portion such that the edges of the first and second portions are not spaced apart from one another.”

(2) The Court construes the term “said working channel has a cross-section circumscribed by said first and second portions” to mean: “said working channel has a cross-section circumscribed by said first and second portions such that the edges of the first and second portions are not spaced apart from one another.”

(3) The Court construes the term “a first portion and a second portion substantially circumscribing said working channel” to mean: “a first portion and a second portion substantially circumscribing said working channel such that the edges of the first and second portions are not spaced apart from one another.”

(4) The Court construes the term “substantially enclosed” to mean: “enclosed such that there are no gaps between the first and second portions of the retractor.”

(5) The Court construes the term “laterally moving each of said first and second portions away from one another” to mean: “moving each of the first and second portions away from one another in a direction that is transverse to the central axis of the working channel.”

(6) The Court construes the term “a lateral separator for laterally separating said first and second portions” to mean: “a component that is able to move the first and second portions in a direction that is transverse to the central axis of the working channel.”

(7) The Court construes the term “each of said first and said [second] portions are laterally separable . . . relative to one another” to mean: “each of the first and second portions are able to move apart from one another in a direction transverse to the central axis of the working channel.”

(8) The Court construes the term “a lateral separator operable to laterally separate each of said first portion and said second portion from the other of said first portion and said second portion” to mean: “a component that is able to move apart from one another each of the first portion and the second portion in a direction transverse to the central axis of the working channel.”

(9) The Court construes the term “laterally separating . . . each one of first and second portions of the retractor relative to the other of the first and second portions of the retractor” to mean: “moving apart each one of the first and second portions of the retractor in a direction that is transverse to the central axis of the working channel.”

(10) The Court construes the term “engageable” to mean: “capable of being fitted together with or connected to.”

**d. Claim Constructions for the ’236 Patent**

(1) The Court construes the term “stimulus signal” to mean: “an electrical signal for eliciting a neuromuscular response.”

### 2.5 OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, of claims 1, 20, 56, and 63 of the '933 patent, claims 78 and 148 of the '586 patent, and claims 1, 5 and 9 of the '236 patent use the word "comprising." "Comprising" means "including" or "containing but not limited to." That is, if you decide that NuVasive's product or method includes all the requirements in one of these claims, the claim is infringed. This is true even if the accused product or method includes components in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

**2.6 INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not NuVasive has infringed the ’586 or ’933 patents and whether Medtronic Sofamor Danek USA has infringed the ’236 patent. You do not need to decide infringement of the ’973 patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, the patent holder must also prove that the alleged infringer’s indirect infringement caused direct infringement.

In this case, Warsaw Orthopedic has alleged that NuVasive directly infringes claims 78, 148, and 167 of the ’586 patent by making and selling its Helix and Helix Mini anterior cervical plating systems, and claims 21 and 57 of the ’933 patent by making and selling its MaXcess II and III tissue retractors. In addition, Warsaw Orthopedic has alleged that NuVasive’s customers directly infringe claim 66 of the ’933 patent, and that NuVasive is liable for actively inducing or contributing to that direct infringement of that claim by its customers. In order to prove infringement, Warsaw Orthopedic must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

NuVasive has alleged that Medtronic Sofamor Danek USA customers directly infringe the ’236 patent, and that Medtronic Sofamor Danek USA is liable for actively inducing or contributing to that direct infringement by its customers. In order to prove infringement, NuVasive must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

**2.7 DIRECT INFRINGEMENT—LITERAL INFRINGEMENT**

With respect to the ’586 patent, Warsaw Orthopedic is asserting direct, literal infringement.

To prove literal infringement, Warsaw Orthopedic must prove that it is more probable than not that NuVasive’s Helix or Helix Mini products include every requirement in Warsaw Orthopedic’s ’586 patent claims. If NuVasive’s product omits any requirement recited in Warsaw Orthopedic’s claims, NuVasive does not infringe that claim.

If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately whether the product meets additional requirements of any claims that depend from the independent claim and, thus, whether those claims have also been infringed. That is because a dependent claim includes all the requirements of any of the claims to which it refers, plus additional requirements of its own.

For literal infringement of the ’586 patent, Warsaw Orthopedic is not required to prove that NuVasive intended to infringe or knew of the patent.

## 2.8 INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS"

With respect to the '933 Patent, Warsaw is asserting infringement under the "doctrine of equivalents."

If a product does not literally meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies each limitation either literally or under the "doctrine of equivalents."

To prevail on its allegation of infringement for the '933 patent, Warsaw Orthopedic must prove that it is more probable than not that the accused product and method contains requirements identical or equivalent to each claimed requirement of the patented invention. You must proceed on a requirement-by-requirement basis. Warsaw Orthopedic must establish that each requirement in the claim is present in the accused product, either literally or under the doctrine of equivalents.

A claim requirement is present in an accused product or method under the doctrine of equivalents if the difference between the claim requirement and a corresponding aspect of the accused product or method is insubstantial.

In making this determination, you may consider whether the corresponding aspect performs substantially the same function in substantially the same way to achieve substantially the same result as the requirement in the claim. You may also consider whether people of ordinary skill in the art believed that the corresponding aspect of the accused product or method and the requirement recited in the patent claim were interchangeable at the time of the alleged infringement. The proper time for evaluating equivalency—and thus knowledge of interchangeability between requirements—is the time of infringement, not the time the patent was issued. Under the doctrine of equivalents, those of ordinary skill in the art do not have to know of the equivalent when the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents.

## 2.9 INDUCING PATENT INFRINGEMENT

Warsaw Orthopedic also alleges that NuVasive indirectly infringed claim 66 of the ’933 patent, and NuVasive alleges that Medtronic Sofamor Danek USA indirectly infringed the ’236 patent. There are two types of indirect infringement: inducing infringement and contributory infringement.

A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To prove that the alleged infringer induced patent infringement, the patent holder must prove that it is more probable than not that:

1. the alleged infringer actively encouraged or instructed another person on how to use a product or perform a process in a way that infringes at least one patent claim;

2. the alleged infringer knew of the patent at that time;

3. the alleged infringer knew or was willfully blind to the fact that the induced acts constituted patent infringement of at least one patent claim; and

4. the other person infringed at least that one patent claim

The patent holder must prove that the alleged infringer had a specific intent to induce the infringement. To do this, the patent holder must prove that the alleged infringer knowingly induced infringement or was willfully blind to the fact that the induced acts constituted patent infringement, not merely that the alleged infringer knowingly induced the acts that constitute infringement.

## 2.10 CONTRIBUTORY INFRINGEMENT

Warsaw Orthopedic also alleges that NuVasive contributorily infringed claim 66 of the ’933 patent, and NuVasive alleges that Medtronic Sofamor Danek USA contributorily infringed the ’236 patent.

Contributory infringement occurs when a party with knowledge of the patent supplies a part, or a component, to another for use in a product, machine, or process that infringes a patent claim. The patent holder must prove that it is more probable than not that contributory infringement occurred. As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

Contributory infringement arises only if one who received the component infringes a patent claim. The component must also have three characteristics.

1. the component must be a material part of the invention;

2. the component must be especially made or adapted for use in a way that infringes at least one claim of the patent, and the supplier must know that the component was especially made for that use; and

3. the component must not have a significant non-infringing use.

A component that has a number of non-infringing uses is often referred to as a staple or commodity article. Providing such a staple or commodity article is not contributory infringement even if the person receiving or buying the article uses it in an infringing way.

**2.11 INVALIDITY—GENERALLY**

I will now instruct you on the rules you must follow in deciding whether or not NuVasive has proven that any claims of its asserted patent are invalid. Because a patent is presumed to be valid, to prove that any claim of a patent is invalid, an alleged infringer must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction, that the claim is invalid.

## 2.12 ANTICIPATION

NuVasive contends that the asserted claims of Warsaw Orthopedic's '973 Patent are invalid because the claimed invention is not new. An alleged infringer may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention is not new.

For the claim to be invalid because it is not new, an alleged infringer must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

In this case, you must determine the date of invention. The date of invention is either when the invention was reduced to practice or when conceived, provided the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony, or the testimony of others asserting prior art, that confirms the date of invention. Conception may be proven when the invention is shown in its complete form by contemporaneous drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed, used or tested sufficiently to show that it will work for its intended purpose, or when the inventor files a patent application. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.

Here is a list of ways that an alleged infringer can show that a patent claim was not new:

(1) The claimed invention was known to or used by others in the United States before the date of invention. An invention is known when the information about it was reasonably accessible to the public on that date.

(2) The claimed invention was already patented or described in a printed publication, anywhere in the world before the date of invention.

(3) The claimed invention was described in a patent granted on an application for patent by another filed in the United States and the application was filed before the date of invention.

(4) The claimed invention was made by someone else in the United States before the invention was made by the patent holder and the other person did not abandon, suppress, or conceal the invention.

(5) The claimed invention was patented or described in a printed publication anywhere in the world more than one year before the earliest effective filing date for the '973 patent.

(6) The claimed invention was publicly or commercially used in the United States more than one year before the earliest effective filing date for the ‘973 patent.

(7) A device or method using the claimed invention was sold or offered for sale in the United States more than one year before the earliest effective filing date for the ‘973 patent.

The earliest effective filing date for claims 57 & 61 of the ‘973 patent is February 27, 1995. The earliest effective filing date for claims 24, 41 & 42 is June 7, 1995.

To establish that the claimed invention is invalid for any of the above reasons, the alleged infringer must establish by clear and convincing evidence that the invention is not new. That is, based on the evidence presented to you in this case, you must be left with a clear conviction that the claim is not new.

## 2.13 OBVIOUSNESS

NuVasive also contends that the asserted claims of the ’973 patent are invalid as obvious. A patent claim is invalid if NuVasive proves by clear and convincing evidence that the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed. This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

However, a patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether NuVasive has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you should consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions. First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Second, you must decide the scope and content of the prior art. Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1) commercial success of a product due to the merits of the claimed invention;

(2) a long felt need for the solution provided by the claimed invention;

(3) unsuccessful attempts by others to find the solution provided by the claimed invention;

(4) copying of the claimed invention by others;

(5) unexpected and superior results from the claimed invention;

(6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7) other evidence tending to show nonobviousness;

(8) independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9) other evidence tending to show obviousness.

The presence of factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factors 8-9 may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

**2.14 SCOPE AND CONTENT OF PRIOR ART**

Warsaw Orthopedic and NuVasive disagree on whether certain prior art references should be included in the prior art you use to decide the validity of the asserted claims of the ’973 patent. To qualify as prior art relevant to the patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem. Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

**3.0 DAMAGES—INTRODUCTION**

I will now instruct you on damages. If you find that an alleged infringer has infringed one or more valid claims, you must determine the amount of money damages to which the patent holder is entitled. By instructing you on damages, I do not suggest that one or the other party should prevail. These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate the patent holder for the infringement, but it may not be less than a "reasonable royalty." At the same time, your damages determination must not include additional sums to punish the alleged infringer or to set an example. You may award compensatory damages only for the loss that the patent holder proves was more likely than not caused by the alleged infringer's infringement.

**3.1 DAMAGES—BURDEN OF PROOF**

Where the parties dispute a matter concerning damages, it is the patent holder's burden to prove that it is more probable than not that the patent holder's version is correct. The patent holder must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, the patent holder is not entitled to damages that are remote or speculative.

**3.2 DAMAGES—LOST PROFITS**

In this case, Warsaw Orthopedic seeks to recover lost profits for NuVasive's alleged sales of infringing products and products that are functionally related to those products for the period beginning May 2006. Warsaw Orthopedic seeks a reasonable royalty on NuVasive's allegedly infringing and convoyed sales for the period beginning May 2004 to April 2006.

To recover lost profits, Warsaw Orthopedic must show a causal relationship between NuVasive's infringement and Warsaw Orthopedic's loss of profit. In other words, Warsaw Orthopedic must show that, but for the infringement, there is a reasonable probability that Warsaw Orthopedic would have earned higher profits. To show this, Warsaw Orthopedic must prove that, if there had been no infringement, it would have profited from additional sales of products that competed with NuVasive's accused products and products that are functionally related to those products. Warsaw Orthopedic itself must have lost profits, not Medtronic. To demonstrate lost profits, Warsaw Orthopedic must show that profits actually flow to it, and not solely to its parent company or other affiliated entities.

One way for Warsaw Orthopedic to prove that it is entitled to lost profits is to establish each of the following:

(1) That there was demand for the patented products and methods.

(2) That there were no available, acceptable, noninfringing substitute products, or, if there were, its market share of the number of the sales made by NuVasive that Warsaw Orthopedic would have made, despite the availability of other acceptable noninfringing substitutes.

(3) That Warsaw Orthopedic had the manufacturing and marketing capacity to make any infringing sales actually made by NuVasive and for which Warsaw Orthopedic seeks an award of lost profits—in other words, that Warsaw Orthopedic was capable of satisfying the demand.

(4) The amount of profit that Warsaw Orthopedic would have made if NuVasive had not infringed.

**LOST PROFITS—MARKET SHARE**

One way a patent holder may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products. You may award a patent holder a share of profits equal to that market share.

In deciding a patent holder's market share, you must decide how many products are in a patent holder's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different than, the other.

## 3.3 LOST PROFITS—CONVOYED OR COLLATERAL SALES

In this case, Warsaw Orthopedic is also seeking lost profits from sales of devices and products that it contends it would have sold along with the competing implants, retractors, and ACP's. These products are called collateral or convoyed products. To recover lost profits on sales of such collateral products, Warsaw must establish three things by a preponderance of the evidence:

1. Warsaw would have sold the collateral products if NuVasive had not infringed;

2. That the collateral products and the patented products together are analogous to components of a single assembly or parts of a complete machine, or, in other words, they constitute a single functional unit; and

3. The amount of the profit Warsaw would have made on sales of the collateral products.

Recovery for lost profits on convoyed sales must not include items that essentially have no functional relationship to the competitive product and that have been sold with the competitive product only as a matter of convenience or business advantage.

For any infringing sales where Warsaw does not seek, or does not prove, lost profits damages, the law requires that you award Warsaw a reasonable royalty. I will now instruct you on how to calculate reasonable royalty damages.

## 3.4 REASONABLE ROYALTY—ENTITLEMENT

If you find that Warsaw Orthopedic has established infringement of the ’973, ’586 or ’933 patents, Warsaw Orthopedic is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Warsaw Orthopedic has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Warsaw Orthopedic a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

Similarly, if you find that NuVasive has established infringement of the ’236 patent, NuVasive is entitled to a reasonable royalty to compensate it for that infringement.

## 3.5 REASONABLE ROYALTY—RELEVANT FACTORS

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the allegedly infringing sales first began.

The hypothetical negotiation should be viewed as a marketplace confrontation of the parties that relies on any economic factor that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating a hypothetical license. This negotiation must not take place in a vacuum of pure logic – it must instead take into account what any normally prudent businessman would have considered under like circumstances. The royalty should be reasonable – something that would be accepted by a prudent licensee who wished to obtain a license but was not so compelled, and a prudent patentee who wished to grant a license but was not so compelled.

In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. Although an infringer's anticipated profit from use of the patented invention is among the factors to be considered in determining a reasonable royalty, the law does not require that an infringer be permitted to make a profit.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor and a licensee would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place on the eve of first infringement.

**3.6 DAMAGES—WHEN DAMAGES BEGIN**

In this case, you should assess damages (if any) for Warsaw Orthopedic's '933 patent beginning in September 2005. Warsaw Orthopedic and NuVasive have agreed upon this date.

In this case, you should assess damages (if any) for Warsaw Orthopedic's '586 patent beginning in August 2007. Warsaw Orthopedic and NuVasive have agreed upon this date.

In this case, you should assess damages (if any) for Warsaw Orthopedic's '973 patent beginning in May 2004. Warsaw Orthopedic and NuVasive have agreed upon this date.

In this case, you must decide when to begin assessing damages (if any) for NuVasive's '236 patent. NuVasive and Medtronic Sofamor Danek USA dispute the date for the start of infringement on this patent. NuVasive contends that January 2009, the date when the patent issued, is the appropriate date to start damages. Medtronic Sofamor Danek USA contests this date.

**4.0 DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**4.1 USE OF NOTES**

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

**4.2 COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through my Courtroom Deputy, signed by your presiding juror or by one or more members of the Jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone-including me-how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**4.3 RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

# VERDICT FORM

We, the jury in the above-titled action, find the following verdict on the questions submitted to us:

## I. THE ’973 PATENT

**Question 1.** Has NuVasive shown by clear and convincing evidence that the following claims of the ’973 patent are invalid as anticipated by the prior art:

| | | | | |
|---|---|---|---|---|
| **Claim 24** | **Yes** | ______ | **No** | ______ |
| **Claim 41** | **Yes** | ______ | **No** | ______ |
| **Claim 42** | **Yes** | ______ | **No** | ______ |
| **Claim 57** | **Yes** | ______ | **No** | ______ |
| **Claim 61** | **Yes** | ______ | **No** | ______ |

(Checking “Yes” is a finding in favor of NuVasive; checking “No” is a finding in favor of Warsaw Orthpedic)

**Question 2.** Has NuVasive shown by clear and convincing evidence that the following claims of the ’973 patent are invalid as obvious in light of the prior art:

| | | | | |
|---|---|---|---|---|
| **Claim 24** | **Yes** | ______ | **No** | ______ |
| **Claim 41** | **Yes** | ______ | **No** | ______ |
| **Claim 42** | **Yes** | ______ | **No** | ______ |
| **Claim 57** | **Yes** | ______ | **No** | ______ |
| **Claim 61** | **Yes** | ______ | **No** | ______ |

(Checking “Yes” is a finding in favor of NuVasive; checking “No” is a finding in favor of Warsaw Orthopedic)

/ / /

## II. THE ’933 PATENT

**Question 3.** Has Warsaw shown by a preponderance of the evidence that NuVasive infringes the following claims of the ’933 patent:

| | | | | |
|---|---|---|---|---|
| **Claim 21** | **Yes** | ______ | **No** | ______ |
| **Claim 57** | **Yes** | ______ | **No** | ______ |
| **Claim 66** | **Yes** | ______ | **No** | ______ |

(Checking “Yes” is a finding in favor of Warsaw Orthopedic; checking “No” is a finding in favor of NuVasive)

## III. THE ’586 PATENT

**Question 4.** Has Warsaw Orthopedic shown by a preponderance of the evidence that NuVasive infringes the following claims of the ’586 patent:

| | | | | |
|---|---|---|---|---|
| **Claim 78** | **Yes** | ______ | **No** | ______ |
| **Claim 148** | **Yes** | ______ | **No** | ______ |
| **Claim 167** | **Yes** | ______ | **No** | ______ |

(Checking “Yes” is a finding in favor of Warsaw Orthopedic; checking “No” is a finding in favor of NuVasive)

## IV. THE ’236 PATENT

**Question 5.** Has NuVasive shown by a preponderance of the evidence that Medtronic Sofamor Danek USA infringes the following claims of the ’236 patent:

| | | | | |
|---|---|---|---|---|
| **Claim 1** | **Yes** | ______ | **No** | ______ |
| **Claim 5** | **Yes** | ______ | **No** | ______ |
| **Claim 9** | **Yes** | ______ | **No** | ______ |

(Checking “Yes” is a finding in favor of NuVasive; checking “No” is a finding in favor of Medtronic Sofamor Danek USA)

## V. DAMAGES TO WARSAW ORTHOPEDIC (IF APPLICABLE):

**If you found at least one claim of one Warsaw Orthopedic patent to be both valid and infringed, please answer the following three questions. If you did not find at least one Warsaw Orthopedic claim both valid and infringed, you may skip Questions 6, 7 & 8 and proceed to Questions 9 & 10.**

**Question 6.** Has Warsaw Orthopedic shown by a preponderance of the evidence that it is entitled to lost profits damages?

**Yes** ______ **No** ______

(Checking "Yes" is a finding in favor of Warsaw Orthopedic; checking "No" is a finding in favor of NuVasive)

**Question 7.** What amount of damages has Warsaw Orthopedic shown it is entitled to by a preponderance of the evidence?

**YOU MAY AWARD DAMAGES UNDER ONLY ONE OF WARSAW ORTHOPEDIC'S ALTERNATIVE THEORIES**:

**Lost Profits Damages (with royalty remainder):** $__________________

OR

**Reasonable Royalty Damages ONLY:** $__________________

/ / /

**Question 8.** What royalty rate did you use in calculating the damages above for each asserted Warsaw Orthopedic patent that was both valid and infringed?

**'973 Patent Royalty Rate** ______%

**'933 Patent Royalty Rate** ______%

**'586 Patent Royalty Rate** ______%

## VI. DAMAGES TO NUVASIVE (IF APPLICABLE)

**If you found at least one claim of NuVasive's '236 patent both valid and infringed, please answer the following question. If you did not find at least one claim both valid and infringed, you may skip Questions 9 & 10.**

**Question 9.** What amount of damages has NuVasive shown it is entitled to by a preponderance of the evidence?

**Reasonable Royalty Damages** $________________

**Question 10.** What royalty rate did you use in calculating the damages above?

**'236 Patent Royalty Rate** ______%

______________________________ ______________________________

Date Jury Foreperson