Todd G. Miller (SBN 163200), miller@fr.com
Craig E. Countryman (SBN 244601), countryman@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: 858-678-5070/Fax: 858-678-5099

Frank E. Scherkenbach (SBN 142549), scherkenbach@fr.com
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210-1878
Phone: 617-542-5070/Fax: 617-542-8906

John M. Farrell (SBN 99649), farrell@fr.com
Jonathan J. Lamberson (SBN 239107), lamberson@fr.com
Keeley I. Vega (SBN 259928), kvega@fr.com
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone: 650-839-5070/Fax: 650-839-5071

Attorneys for Defendant/Counterclaimant/Counterclaim Defendant
NUVASIVE, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC.,<br><br>                      Plaintiff,<br><br>        v.<br><br>NUVASIVE, INC.,<br><br>                      Defendant. | Case No. 3:08-CV-1512 MMA (MDD)<br><br>**NUVASIVE'S RESPONSE TO WARSAW'S OPENING BRIEF REGARDING ONGOING ROYALTIES AND PREJUDGMENT INTEREST**<br><br>Judge:      Hon. Michael M. Anello<br>Courtroom:  5, 3rd floor |
| NUVASIVE, INC.,<br><br>                      Counterclaimant,<br><br>        v.<br><br>MEDTRONIC SOFAMOR DANEK USA, INC.,<br><br>                      Counterclaim Defendant. | |
| AND RELATED COUNTERCLAIMS. | |

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 1

II.  ONGOING ROYALTIES ........................................................................................ 3

    A.   The Court Should Decline to Impose An Ongoing Royalty At This Time ................................................................................................................. 3

    B.   Warsaw's Methodology for Arriving at its Proposed Royalties is Deeply Flawed ..................................................................................................... 5

    C.   Warsaw's *Georgia-Pacific* Analysis Rehashes Arguments Made at Trial ................................................................................................................... 7

    D.   NuVasive's Future Sales are Not *Per Se* Willful ............................................. 10

    E.   The Cases Warsaw Relies on are Inapplicable ................................................. 13

III. PRE-JUDGMENT INTEREST ............................................................................ 15

    A.   Any Award of Pre-Judgment Interest is Inappropriate ...................................... 15

       1.   The Jury's Award Is Presumed To Include Interest ............................... 15

       2.   Warsaw's Delay in Filing Suit Bars Prejudgment Interest .................... 16

    B.   An Award of Interest Using the California State Statutory Rate is Inappropriate ..................................................................................................... 16

IV.  WARSAW'S REQUEST FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT SHOULD BE DENIED ............................................................... 17

V.   CONCLUSION ..................................................................................................... 18

### TABLE OF AUTHORITIES

CASES

*Amado v. Microsoft Corp.*,
   2008 WL 8641264 (C.D. Cal. Dec. 4, 2008) ................................................................. 13

*Amado v. Microsoft Corp.*,
   *517 F.3d 1353, 1362 (Fed. Cir. 2008)* ........................................................... 10, 13

*Bard Peripheral Vascular v. W.L. Gore & Assocs.*,
   2012 U.S. App. LEXIS 2612 (Fed. Cir. February 10, 2012) ................................ 14

*Bard Peripheral Vascular v. W.L. Gore Assocs.*,
   2010 U.S. Dist. LEXIS 144259 (D. Ariz. September 8, 2010) .......................... 14

*Brooktree Corp. v. Advanced Micro Devices*,
   *977 F.2d 1555, 1581 (Fed. Cir. 1992)* ........................................................... 6

*Cordance Corp. v. Amazon.com, Inc.*,
   730 F. Supp. 2d 333 (D. Del. 2010) ................................................................. 4

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ................................................................. 16

*Cybor Corp. v. Fas Techs.*,
   138 F.3d 1448, 1454 (Fed. Cir. 1998) ...................................................... 3, 11

*Dairy Queen, Inc. v. Wood*,
   369 U.S. 469, 478-79 (1962) ................................................................. 6

*Datatreasury Corp. v. Wells Fargo & Co.*,
   2011 U.S. Dist. LEXIS 118443 (E.D. Tex. Aug. 2, 2011) .......................... 14

*Dimick v. Schiedt*,
   293 U.S. 474, 486 (1935) ................................................................. 6

*Excelsior College v. Frye*,
   2007 WL 672517 (S.D. Cal. Feb. 21, 2007) .......................................... 17

*Gen. Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983) ................................................................. 16

*Graco Children's Prods., Inc. v. Century Prods. Co.*,
   1996 U.S. Dist. LEXIS 10356 (E.D. Pa. July 23, 1996) .......................... 15, 16

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
   237 F.3d 1154 (9th Cir. 2001) .......................................................... 17

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
   166 F. Supp. 2d 1008 (D. Del. 2001) .......................................... 15

ii

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   609 F. Supp. 2d 951 (N.D. Cal. 2009) ............................................................ 4, 6

*In re Seagate Tech., LLC*,
   497 F.3d 1360, 1371 (Fed. Cir. 2007) ........................................................ 12, 13

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604, 607 (9th Cir. 1992) ................................................................ 18

*Jones v. Felker*,
   2011 U.S. Dist. LEXIS 123893 at *3-4 (E.D. Cal. October 26, 2011) ............... 18

*Joyal Prods., Inc. v. Johnson Electric North America, Inc.*,
   2009 WL 512156 at *1 (D.N.J. Feb. 27, 2009) .......................................... 13, 14

*Koehler v. Pulvers*,
   614 F. Supp. 829, 850 (S.D. Cal. 1985) ...................................................... 16

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997) .................................................................... 17

*Mondis Tech., Ltd. v. Chimei Innolux Corp.*,
   2011 U.S. Dist. LEXIS 113147 (E.D. Tex. Sept. 30, 2011) ............................ 14

*Orion IP, LLC v. Mercedes-Benz USA, LLC*,
   2008 U.S. Dist. LEXIS 108683 (E.D. Tex. March 28, 2008) ..................... 10, 15

*Paice LLC v. Toyota Motor Corp.*,
   504 F.3d 1293, 1315 (Fed. Cir. 2007) ................................................ 4, 13, 14

*Paice LLC v. Toyota Motor Corp.*,
   609 F.Supp.2d 620, 630 (E.D. Tex. 2009) ................................................... 14

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
   383 F.3d 1303, 1311 (Fed. Cir. 2004) ..................................................... 3, 11

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   2010 U.S. Dist. LEXIS 79039 (S.D. Cal. August 5, 2010) ....................... 1, 6, 9, 13

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816, 827 (Fed. Cir. 1992) ...................................................... 11, 13

*Ricoh Co. v. Quanta Computer, Inc.*,
   2010 U.S. Dist. LEXIS 38220 (W.D. Wis. April 19, 2010) ................................ 4

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336, 1349 (Fed. Cir. 2011) ......................................................... 11

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
   620 F.3d 1305, 1319 (Fed. Cir. 2010) .................................................. 12, 17, 18

iii

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
    257 F.3d 1331, 1351 (Fed. Cir. 2001) ............................................................... 12

*Telcordia Techs., Inc. v. Cisco Sys.*,
    612 F.3d 1365 (Fed. Cir. 2010) ................................................................... 4, 5

*Telecordia Techs., Inc. v. Cisco Sys., Inc.*,
    592 F. Supp. 2d 727 (D. Del. 2009) ................................................................. 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292, 1315 (Fed. Cir. 2011) ........................................................... 14

*Voda v. Cordis Corp.*,
    2006 U.S. Dist. LEXIS 63623 at *20-21 (W.D. Ok. September 5, 2006) ............... 6

**STATUTES**

28 U.S.C. § 1961 ............................................................................................ 17, 19

35 U.S.C. § 101 *et seq.* ........................................................................................ 3

Federal Rule of Civil Procedure 16 ..................................................................... 18

Case No. 3:08-CV-1512 MMA (MDD)

**I.     INTRODUCTION**

As a threshold matter, the Court should decline to address Warsaw's request for ongoing royalties and prejudgment interest until after the appeal on the merits.  A reversal on any of the legal issues each side is likely to appeal will alter the availability and amount of any ongoing royalties, in particular.  It makes no sense to award royalties now (as Warsaw requests), when those payments may need to be returned depending on the Federal Circuit's decision. Conversely, any delay in the payment of post-judgment royalties can be remedied by post-judgment interest if necessary.

Turning to the merits, this Court previously determined that, because of the critical, life-saving importance of NuVasive's technology to doctors and patients, the public would be disserved by enjoining NuVasive from selling its implants, retractors, and anterior cervical plates ("ACPs"). (Lamberson Decl., Ex. A (1/26/2012 Hearing Tr.) at 7:3-11).  Now, Warsaw seeks to stop NuVasive from selling these same products through another means – by asking the Court to impose a royalty so onerous that NuVasive would actually lose money selling its CoRoent implants.  Specifically, Warsaw's expert opines that NuVasive's "incremental profitability" on CoRoent implants is 30%, yet disregarding that this is not a net profit and also disregarding the jury's determination of reasonable royalty rates, he seeks an even higher royalty of 36% on those sales.  (*See* Neels Decl., ¶ 24).  In fact, Warsaw's expert entirely disregards that NuVasive has only recently turned profitable after operating at a loss for more than a decade as it developed an entirely new procedure. Warsaw's disregard of the enormous costs that NuVasive incurs in bringing its products to market stands in stark contrast to case law from this district, which states that an ongoing royalty "is the amount that a person, desiring to manufacture, use, or sell a patented article, **as a business proposition**, would be willing to pay as a royalty **and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit**."  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2010 U.S. Dist. LEXIS 79039 at *10 (S.D. Cal. August 5, 2010) (emphasis added).  Notably, Warsaw's expert ignores that NuVasive's alleged 30% profit margin does not include many cost categories including those related to research and development – a critical expense for young medical device companies. This is especially true for NuVasive, which has invested heavily since the 1990's to create the tools that comprise the first FDA approved lateral

1

spinal fusion solution, to create the demand for this procedure and to ensure that surgeons are properly trained to perform the procedure in a safe and reproducible manner.  Because Warsaw's proposed royalties are punitive and ignore the massive investments that NuVasive has made over the past thirteen years, and continues to make to improve its lateral fusion solution, they should be rejected.  Determination of any ongoing royalties should be addressed after the appeal on the merits.

Also, the methodology by which Warsaw calculated its proposed ongoing royalties is deeply flawed.  While Warsaw purports to conduct a *Georgia-Pacific* analysis, it never actually uses that analysis in reaching its proposed royalty rates.  To the contrary, Warsaw reaches its proposed rates by taking the jury's ***lost profits*** award, and determining what effective royalty would reach that same number.  No case has ever adopted such an approach in setting ongoing royalties, and no case has ever approved of compensating a party for future ***lost profits*** by dramatically increasing the royalty rates found by a jury.

Moreover, even if viewed as an application of the *Georgia-Pacific* analysis, none of the factors Warsaw discusses in its brief are new – Warsaw presented all of these same arguments to the jury, which rejected Warsaw's proposed 25% royalty across the board and awarded far lower rates than those Warsaw seeks here.  And with respect to Warsaw's claims of alleged "willfulness," it was ***NuVasive*** that created lateral spinal surgery – despite the '973 patent's issuance in 1995, these procedures did not exist until NuVasive created them in 2003.  None of the implants described in the '973 patent has ever been commercialized for lateral fusion surgery, and none of them has ever been FDA approved for lateral surgery.  Rather, it was NuVasive who did the difficult work of creating a lateral surgery method and implants that could pass FDA standards.   This is not a case involving "egregious" or "reckless" behavior by NuVasive and Warsaw never alleged any conduct by NuVasive warranting the imposition of enhanced damages.  NuVasive wants to continue selling products that help save and improve peoples' lives, and it would be inappropriate to set a royalty rate so high that it would prevent NuVasive from making these sales.  Because Warsaw's proposed royalty rates are arbitrary, unsupported, and legally improper, they must be rejected.

1    With respect to prejudgment interest, this case arises under the Federal patent laws

2  (35 U.S.C. § 101 *et seq*.).  There are no state law causes of action, and Warsaw's attempt to use the

3  state statutory rate for prejudgment interest (7%) is improper.

4    Finally, Warsaw improperly uses this narrowly-focused briefing to seek leave to file an

5  amended complaint adding two additional Medtronic entities to this lawsuit.  Warsaw gives no

6  explanation for why these parties should be added.  Either Warsaw hopes for a double (or triple)

7  recovery by adding these additional entities, or it hopes to cure defects in its damages case, which

8  only highlights the fact that it improperly sought – and was awarded – damages for entities that lack

9  standing.  In either event, its request is improper and untimely, and should be denied, especially

10  since Warsaw does not even attach the agreements that purportedly give these two entities *post hoc*

11  standing to sue for infringement.

12  **II.    ONGOING ROYALTIES**

13    **A.    The Court Should Decline to Impose An Ongoing Royalty At This Time**

14    Warsaw's request for exorbitant ongoing royalties only highlights the significant reasons

15  why the Court should decline to address this issue until after the appeal on the merits.  The claim

16  construction disputes with respect to the '973, '933 and '586 patents are pure issues of law that the

17  Federal Circuit will review *de novo*.  *See Cybor Corp. v. Fas Techs*., 138 F.3d 1448, 1454 (Fed. Cir.

18  1998) ("because claim construction is purely a matter of law, this court reviews the district court's

19  claim construction *de novo* on appeal").  The same is true for Warsaw's claim for lost profits

20  damages.  *See Poly-America, L.P. v. GSE Lining Tech., Inc*., 383 F.3d 1303, 1311 (Fed. Cir. 2004)

21  ("Whether lost profits are legally compensable in a particular situation is a question of law that we

22  review *de novo*").  A reversal on any of these legal issues will significantly alter the availability and

23  amount of any ongoing royalties.  It makes little sense to award royalties now (as Warsaw requests),

24  when those payments may need to be returned if the Federal Circuit's *de novo* assessment reaches

25  conclusions contrary to those of this Court.  Also, this is not a case where either party is facing

26  insolvency – Warsaw and Medtronic are large, well-funded public companies.  As Warsaw admits

27  in its briefing, NuVasive has more than sufficient funds to satisfy any damages award, with interest

28  (if appropriate).  (Motion at 14).  And Medtronic reported profits of $627 million in its most recent

fiscal year, with **$1.4 billion** in cash-on-hand.  (Lamberson Decl., Ex. B).  Even assuming the full amount of the jury verdict stands, there is no argument that this money is somehow essential to Medtronic's ongoing operations.

As the Federal Circuit explicitly cautioned in *Paice*, the imposition of an ongoing royalty should not be routine, even in cases such as this where injunctive relief has been denied.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007).  Relying on *Paice*, multiple district court decisions have declined to award an ongoing royalty, and instead ordered the parties to negotiate a royalty.  *See Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 344-48 (D. Del. 2010) (noting that "[l]ike the decision to grant or deny injunctive relief, it is within the court's equitable discretion to determine whether an ongoing royalty need be imposed," and denying the request for an ongoing royalty based in part on the fact that both parties were going to appeal to the Federal Circuit); *Telecordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 748 (D. Del. 2009) (declining to adopt plaintiff's request for a compulsory license, and ordering the parties to negotiate the terms of a going forward royalty); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 986-87 (N.D. Cal. 2009) ("In such situations, the best practice is to order the parties to negotiate the terms of an ongoing royalty for the court to impose"); *Ricoh Co. v. Quanta Computer, Inc.*, 2010 U.S. Dist. LEXIS 38220 at *11 (W.D. Wis. April 19, 2010) ("Under *Paice*, the general rule is 'to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty' … Accordingly, I will direct the parties to engage in negotiations regarding an appropriate royalty).  The Federal Circuit expressly affirmed the district court's denial of an ongoing royalty in *Telecordia*.  *See Telcordia Techs., Inc. v. Cisco Sys.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("the district court did not abuse its discretion by directing the parties to negotiate the terms of the appropriate royalty").  Here, instead of forcing an ongoing royalty on the parties, the Court should instead allow Warsaw and NuVasive time to negotiate their own going forward royalty.  This can proceed in parallel with the appeal on the merits.

This approach is especially warranted in light of the excessive remedy Warsaw requests in its briefing.  If the Court is inclined to entertain the onerous rates put forward by Warsaw, and to

4

1  deviate so dramatically from the royalty rates awarded by the jury, NuVasive would respectfully

2  request the opportunity to depose Warsaw's expert, Dr. Neels, and potentially prepare a responsive

3  report from its own expert, Dr. Ryan Sullivan.  NuVasive would also respectfully request that the

4  Court conduct a live hearing to take testimony from both experts, to assess their credibility.[1]  None

5  of this need delay the appeal, but given the punitive nature of the royalties requested by Warsaw, a

6  full record on this issue is essential.

7        **B.      Warsaw's Methodology for Arriving at its Proposed Royalties is Deeply Flawed**

8              Warsaw claims that its approach for calculating post-verdict royalties is based on a

9  "modified *Georgia-Pacific* analysis."  (D.I. 463 at 6).  Yet while Warsaw spends several pages of

10  its brief purportedly analyzing various *Georgia-Pacific* factors, the way Warsaw actually

11  determined its proposed going-forward royalty rates has nothing to do with *Georgia-Pacific*.

12  Instead, Warsaw's expert took the jury's royalty rates and applied them to the infringing sales he

13  presented at trial, arriving at a reasonable-royalty-only award of $27,877,405.[2]  (D.I. 463 at 13).

14  Then, he determined what "multiplier" would be necessary to increase that royalty-only number to

15  the amount awarded by the jury ($101,196,000), which he calculated to be 3.63 ($101,196,000

16  divided by $27,877,405).  (*Id.*)  Finally, he multiplied each royalty rate awarded by the jury by that

17  3.63 multiplier.  (*Id.*)  There was absolutely no adjustment done to any of the above calculations to

18  account for any of the *Georgia-Pacific* factors discussed in Warsaw's briefing.  Given this, it is

19  unclear why Warsaw even presents a *Georgia-Pacific* analysis, other than to attempt to give its

20  approach some air of legitimacy.

21              In reality, no case has ever adopted the approach Warsaw takes in setting post-verdict

22  royalties.  By determining a going forward ***royalty*** based on a jury award that includes ***lost profits***,

23  Warsaw is in fact seeking future lost profits through a dramatically increased royalty rate.  As noted

24  in NuVasive's opening brief, that is improper and in fact unconstitutional – if Warsaw wants to

25  prove additional lost profits, it must file a new complaint, and a jury must decide disputed issues

---

[1]  Conversely, if the Court is not inclined to award ongoing royalties at this time, or if it chooses to award rates consistent with the jury verdict, no additional briefing or oral argument is necessary.
[2]  NuVasive respectfully believes that Warsaw's lost profits damages claim is improper.  This reasonable-royalty-only calculation is a far more realistic approximation of what the damages in this case should be, assuming the liability verdicts stand.

such as the size and scope of the relevant market, and the amount of convoyed sales if any.  *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962); *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) (holding additur procedure to violate Seventh Amendment).  While Warsaw claims that NuVasive is estopped from challenging its *entitlement* to lost profits, nothing in the jury verdict gives guidance as to how the jury resolved these significant fact disputes related to the *amount* of lost profits.  Also, the market is fluid and changing, and the amount of lost profits Warsaw proved for past infringement (based largely on market data from 2008) are likely very different from what Warsaw may be entitled to seek in the future.  *See Brooktree Corp. v. Advanced Micro Devices*, 977 F.2d 1555, 1581 (Fed. Cir. 1992) (noting the high burden necessary to prove future lost profits because "the future always harbors unknowns").  An ongoing royalty, by contrast, is supposed to be no more than the ministerial task of multiplying two numbers together (a royalty base and a royalty rate), which is why it can be done with no new jury trial.  *See Voda v. Cordis Corp.*, 2006 U.S. Dist. LEXIS 63623 at *20-21 (W.D. Ok. September 5, 2006); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 986 (N.D. Cal. 2009).  Because Warsaw's proposal is a back-door attempt to obtain future lost profits through an ongoing royalty, which is improper, it must be rejected.

Also, by its own analysis, Warsaw's rate would result in NuVasive losing money on sales of its own products.  Specifically, Warsaw's expert opines that NuVasive's "incremental profitability" is 30%, yet he seeks a royalty of 36% on sales of CoRoent implants.  (*See* Neels Decl., ¶ 24).  This position contradicts case law from this district, which states that an ongoing royalty "is the amount that a person, desiring to manufacture, use, or sell a patented article, **as a business proposition**, would be willing to pay as a royalty **and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit**."  *See Presidio*, 2010 U.S. Dist. LEXIS 79039 at *10. Moreover, as Dr. Sullivan explained during trial, this alleged 30% profit margin omits many costs including those related to research and development – a critical expense for medical device companies such as NuVasive..  (*See* Trial Tr., 2059:16-2060:17).  Because Warsaw's proposed royalties are unnecessarily punitive, they should be rejected.

### C.     Warsaw's *Georgia-Pacific* Analysis Rehashes Arguments Made at Trial

As discussed above, Warsaw presents a *Georgia-Pacific* analysis without actually using it to reach its proposed royalty rates, which is improper.  If the Court is inclined to consider any of Warsaw's proposed *Georgia-Pacific* analysis, however, it will quickly recognize that all of Warsaw's purportedly "new" facts simply repeat arguments Warsaw made at trial.  The jury considered all of these facts when it *rejected* Warsaw's proposed 25% royalty rate, instead choosing rates far closer to NuVasive's proposals.  Indeed, new facts suggest a lower royalty rate is appropriate.

First, with respect to *Georgia-Pacific* factor 5, Warsaw states that a post-verdict hypothetical negotiation would allegedly be different because NuVasive is now a larger company and more established in the marketplace, and has become a "much more serious competitive threat to Warsaw."  (Brief at 7, 9).[3]  Yet during trial, Warsaw's own expert stated that "Warsaw would have come to the [pre-verdict hypothetical] negotiation knowing that NuVasive was destined to become a direct competitor."  (Trial Tr., 1020:13-19).  Warsaw's expert presented at trial all of the same evidence he discusses in his declaration, including NuVasive's purported 90% market share, (Trial Tr., 1089:23-1090:3), its alleged direct competition with Warsaw, (Trial Tr., 1016:11-21), and the success of lateral spinal fusion procedures (Trial Tr., 979:4-982:23, 1028:1-19, & 1040:22-1041:24).  The documents Warsaw relies on in its briefing were admitted trial exhibits, and thus were before the jury when it determined the appropriate royalty rates. There is no "new" evidence in Warsaw's briefing or declaration.

Second, with respect to *Georgia-Pacific* factors 9 through 11 (the contribution of the asserted patents), Warsaw suggests that the value of the patented technology is somehow different after trial.  Yet the purported value of the technology was fully presented to the jury.  More importantly, the trial record contradicts Warsaw's argument.  Specifically, Medtronic uses the '973 patent, yet is failing in the marketplace; as Warsaw's own expert acknowledged, the success of

---

[3]  As noted in NuVasive's opening brief, this argument ignores the fact that *Warsaw* is not a competitor to NuVasive – NuVasive competes with MSD USA (the entity which actually carries out sales and has relationships with doctors and hospitals). This lack of direct competition with Warsaw suggests a lower royalty rate, not a higher one.

NuVasive's XLIF thus cannot be attributed solely to the '973 patent.  (Trial Tr., 1090:6-8).  With respect to the '933 patent, the evidence at trial suggested that surgeons in fact prefer the solid retractors, which are not accused of infringement.  (Trial Tr., 1985:18-1986:17).  Moreover, Medtronic admittedly does not even use the retractor described and claimed '933 patent, so it cannot be that critical.  Finally, Medtronic was able to achieve a dominant share of the ACP market without practicing the '586 patent, which means that patent cannot be the basis for customer demand for ACP's.  (Trial Tr., 1087:4-1088:4).  The jury also heard extensive testimony on the state of the art of spinal implants, and whatever incremental improvement the jury may have believed the '973 patent provided, it clearly did not warrant the 15% or 25% royalty rates Warsaw requested.  There is no "new" evidence on any of these factors suggesting that these patents are now more valuable than the jury determined them to be a mere five months ago.

Third, with respect to *Georgia-Pacific* factor 6 (the effect of selling the patented specialty in promoting sales of other products), Warsaw admits that this factor was "amply demonstrated at trial." (Motion at 9).  The jury had before it all of the evidence of the alleged convoyed sales Warsaw claimed, and it presumably relied on that evidence in determining its adjudged royalty rates.  The proper royalty bases were largely undisputed, and Warsaw does not suggest a different royalty base from what it presented at trial.  Again, Warsaw presents nothing new for the Court to consider.

Fourth, with respect to *Georgia-Pacific* factors 1 & 2, Warsaw's expert once again ignores the comparable license agreements discussed in NuVasive's opening brief (D.I. 462 at 6-10), which are consistent with the rates the jury awarded.  Warsaw also ignores its own past history of licensing competitors, (*see* D.I. 430 at 16), which is relevant to *Georgia-Pacific* factor 4.  Warsaw presents no new evidence, other than the jury verdict itself, which NuVasive agrees should guide the determination of ongoing royalty rates.

Fifth, with respect to *Georgia-Pacific* factor 8 (profitability), Warsaw relies on profitability information it presented at trial through cross-examination of Dr. Sullivan.  (*See* Trial Tr., 2040:7-2041:15).  Warsaw asked Dr. Sullivan about NuVasive's profitability through calendar year 2010 at trial, (*see* D.I. 463, Ex. 10), so at most Warsaw can only rely on one additional year of profitability

figures (for calendar year 2011) – but Warsaw's expert Dr. Neels does not even submit any more recent financial information with his declaration.  And even if NuVasive did have a profitable year in 2011, Warsaw gives no proof that this profitability was directly attributable to the asserted patents, as opposed to (for example) the success of NuVasive's nerve monitoring technology.

Sixth, both parties' experts assumed infringement and validity when they presented their damages analysis, (Trial Tr. at 1076:20-1077:17 (Neels); 1904:6-10 (Sullivan)), and the jury only reached damages having found the patents both valid and infringed.  Again, the verdict itself changes nothing in this analysis.

Finally, Warsaw ignores the disposition of its related '661 patent, which would be highly relevant in any post-trial hypothetical negotiation.  As the Court may recall, U.S. Pat. No. 5,772,661 ("the '661 patent") is a sister patent to Dr. Michelson's '973 patent, and claims Dr. Michelson's version of a lateral surgical procedure.  The '661 patent was originally asserted against NuVasive in this case, (see D.I. 1, Count II), but is currently stayed.  While the stay was pending, Medtronic acknowledged the invalidity of the '661 patent and chose to place the '661 patent into a reissue proceeding at the U.S. Patent and Trademark Office.  (PX3103 at 34-35).  A reissue proceeding allows Medtronic to amend the claims of its patent, in this case because the issued claims were too broad and therefore invalid.  (See Id.).  The Patent Office, however, found that even the amended claims of the '661 patent were invalid over lateral fusion surgery prior art from the early 1980's.  (Id. at 1261-76).  This demonstrates that Dr. Michelson and Warsaw have no rights to a lateral surgical method for spinal surgery, and therefore it is entirely overreaching that Warsaw wants to take all profits, indeed even more than all the profits, that NuVasive earns from the commercialization of its own lateral solution, which admittedly includes far more than the components Warsaw's patents allegedly cover.

Put simply, there is nothing "new" about any of Warsaw's arguments – they are the same arguments Warsaw presented to the jury in asking for a 25% royalty on each of the three asserted patents.  The jury rejected that request, and neither party challenged the jury's royalty rates post-trial.  As many district courts have noted, when an injunction is denied, it is often the case that nothing significant changes in the post-suit hypothetical negotiation.  See Presidio, 2010 U.S. Dist.

LEXIS 79039 at *14 ("with permanent injunction off the table, the bargaining position of a willing patentee and infringer are substantially the same as they would have been at the time the infringement began"); *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 2008 U.S. Dist. LEXIS 108683 at *12-14 (E.D. Tex. March 28, 2008) ("[Plaintiff] has not shown how the situation now is any different than that presented at trial, which justified the two percent royalty rate. Accordingly, two percent remains an appropriate royalty rate for postverdict infringement"). Moreover, it is unclear why anything *should* change – if Warsaw filed a new infringement suit (instead of seeking an ongoing royalty), Warsaw would be estopped from challenging the jury's royalty rates, and would be stuck with those amounts. The only new evidence calls for lower, not higher, royalty rates. For all these reasons, Warsaw's proposed rates should be rejected and assessment of ongoing royalties deferred until after the appeal on the merits

### D.    NuVasive's Future Sales are Not *Per Se* Willful

Warsaw repeatedly argues in its brief that "any post-verdict infringement is voluntary and intentional, i.e., willful." (D.I. 463 at 12). Warsaw essentially argues that any sales made after a finding of liability are *per se* willful, but that is not the law, especially here given the significant issues that both parties intend to appeal.

As the Federal Circuit stated in *Amado*, the Court must take into account NuVasive's "likelihood of success on appeal." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008). In addition, before deciding that any enhancement of damages is warranted for alleged "willful" infringement, the Court must consider a multi-factor test that looks at:

(1) Whether NuVasive deliberately copied Medtronic;

(2) Whether NuVasive investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

(3) NuVasive's behavior as a party to the litigation;

(4) NuVasive's size and financial condition;

(5) The closeness of the case;

(6) The duration of NuVasive's adjudged infringement;

(7) Any remedial actions taken by NuVasive;

10

1      (8) NuVasive's motivation for continuing to practice the patents; and

2      (9) Whether NuVasive attempted to conceal its conduct.

3 *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992); *Spectralytics, Inc. v. Cordis*

4 *Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011) (remanding for the district court to determine "whether

5 enhanced damages are warranted under the guidance of *Read*," noting that "the paramount

6 determination in deciding to grant enhancement and the amount thereof is the egregiousness of the

7 defendant's conduct based on all the facts and circumstances"). Here, these factors demonstrate

8 that no enhancement is warranted.

9   First, there is no allegation of deliberate copying by NuVasive – indeed, the evidence at trial

10 demonstrated that *NuVasive* was the market leader, and *Medtronic copied NuVasive* in order to

11 catch up. (*See* Trial Tr., 97:2-5).

12   Second, there has never been an allegation of bad faith litigation by NuVasive – indeed, it

13 was *Warsaw* that made arguments directly contrary to the Court's claim construction order. (*See*

14 D.I. 407 at 2-7).

15   Third, NuVasive is a much smaller company than Medtronic and, while it is financially

16 solid, its financial condition is orders of magnitude different from Medtronic's. (*Compare* D.I. 463,

17 Ex. 8 with Lamberson Decl., Ex. B).

18   Fourth, this was a close case, and NuVasive intends to present substantial arguments on

19 appeal that it respectfully believes will change the liability and damages findings. The claim

20 construction disputes with respect to the '973, '933 and '586 patents are pure issues of law that the

21 Federal Circuit will review *de novo*. *See Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1454 (Fed. Cir.

22 1998) ("because claim construction is purely a matter of law, this court reviews the district court's

23 claim construction *de novo* on appeal"). The same is true for Warsaw's claim for lost profits

24 damages. *See Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004)

25 ("Whether lost profits are legally compensable in a particular situation is a question of law that we

26 review *de novo*"). These significant appellate issues show that the case is still close, even after the

27 jury's verdict.

28

Fifth, NuVasive is attempting to design around the Medtronic patents, but this design-around takes significant time because these are medical devices placed inside the human body. There is no tolerance for error, and any device must be subjected to significant safety and strength testing, and must be approved by the FDA before it can marketed by NuVasive to be used in surgeries. The design-around effort is complicated by the fact that Warsaw has taken many divergent positions on what is and is not covered by its patents.

Sixth, NuVasive's motivation for continuing to practice the adjudged infringed patents is not nefarious – NuVasive makes a product that saves and improves peoples' lives. As Dr. Smith explained at trial, the NuVasive products keep people out of wheelchairs, give them increased mobility with reduced blood loss, and allow doctors to service populations (such as the elderly) who cannot be served by other procedures. (*See* Trial Tr., 1402:20-1404:10, 1404:14-1405:22, & 1435:6-25 & 1438:3-25). This is not a case involving "egregious" or "reckless" behavior, which willfulness was designed to deter.

Finally, there has never been any allegation that NuVasive concealed its alleged infringement. Warsaw knew about XLIF for years, yet sat on the sidelines for four years while NuVasive pioneered lateral fusion surgery, and then only brought this lawsuit after its "me too" DLIF procedure proved a resounding failure.

Warsaw's brief does not address any of these factors, or argue why any multiplication of the jury's award is appropriate. It certainly does not present "clear and convincing" evidence of willfulness, *see Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1351 (Fed. Cir. 2001) ("willfulness must be proven by clear and convincing evidence"). Perhaps most telling of all, Warsaw did not even allege "willfulness" at trial. Therefore, unless NuVasive has done something egregious since trial – which it has not -- Warsaw's new-found willfulness allegation falls of its own weight. Apart from the factors noted above, continuing to sell the accused products in reliance on the objectively reasonable defenses NuVasive presented at trial, alone, defeats any allegation of willfulness. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) ("proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness"); *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010)

12

1    ("This 'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a

2    reasonable defense to a charge of infringement").

3          For all of these reasons, the Court should not credit Warsaw's allegations of "willful"

4    infringement, and it should not increase the jury's award.

5          **E.      The Cases Warsaw Relies on are Inapplicable**

6          Warsaw relies on several cases that it claims support its request to dramatically increase the

7    jury's royalty rates, but none fits the facts of this case.

8          First, the *Amado* decision dealt with an award of a royalty after entry of a permanent

9    injunction.  *See Amado v. Microsoft Corp.*, 2008 WL 8641264 at *1 (C.D. Cal. Dec. 4, 2008).

10   While that injunction was later vacated, the Federal Circuit was clear that the relevant hypothetical

11   negotiation must take place in the shadow of a permanent injunction that would bar up to $500

12   million per month in infringing sales of Microsoft Office.  *See* 517 F.3d at 1362 ("the royalty

13   determination should have taken into account the fact that the sales, although authorized under the

14   terms of the district court's stay, were nevertheless infringing and subject to an injunction"); 2008

15   WL 8641264 at *5 (noting "there is evidence that the injunction would have cost Microsoft $500

16   million a month" and "[i]t is an important consideration that infringement was found subject to an

17   injunction").  The Federal Circuit explicitly said that the facts in *Amado* were different from those

18   in *Paice*, where a permanent injunction was denied.  517 F.3d at 1362.  Here, of course, Warsaw's

19   request for a permanent injunction has been denied twice and, as other courts in this district have

20   noted, this places the parties in essentially the same position as when infringement first began.  *See*

21   *Presidio*, 2010 U.S. Dist. LEXIS 79039 at *14 ("with permanent injunction off the table, the

22   bargaining position of a willing patentee and infringer are substantially the same as they would have

23   been at the time the infringement began").

24         Second, in the *Joyal* case, the defendant actually stipulated that its infringement was willful.

25   *See Joyal Prods., Inc. v. Johnson Electric North America, Inc.*, 2009 WL 512156 at *1 (D.N.J. Feb.

26   27, 2009).  The court found that every single *Read* factor weighed in favor of awarding enhanced

27   damages, except for one (which was neutral).  *Id*. at *4-9.  The court also decided the case was

28   exceptional and warranted awarding plaintiff its attorney fees.  *Id*. at *9-10.  Moreover, the court

1    granted a request for permanent injunctive relief.  *Id*. at *10-13.  It was after making all of these

2    findings that the court reached the issue of the appropriate post-judgment royalty, and it relied on its

3    equitable findings in setting a high ongoing royalty rate.  *Id*. at *14.  As explained above and as

4    demonstrated by the trial record, none of these facts is present here: NuVasive's adjudged

5    infringement was not willful, no factors weigh in favor of increasing damages, the case is not

6    exceptional, and Warsaw's request for a permanent injunction was denied.

7         Third, the ongoing royalty awarded in *Paice* on remand was based on the 25% "rule of

8    thumb," *see Paice LLC v. Toyota Motor Corp*., 609 F.Supp.2d 620, 630 (E.D. Tex. 2009) ("The

9    Court finds the changed factual and legal circumstances, as previously discussed, justify application

10   of the 25% Rule of Thumb to Toyota's profit margin of 9%, thereby yielding a royalty rate of

11   2.25%"), which the Federal Circuit has since held is an inappropriate method to assess patent

12   damages.  *See Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1315 (Fed. Cir. 2011) ("This

13   court now holds as a matter of Federal Circuit law that the 25 percent rule of thumb is a

14   fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation.

15   Evidence relying on the 25 percent rule of thumb is thus inadmissible under Daubert and the

16   Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at

17   issue").

18        Fourth, the Federal Circuit's recent decision in *Bard Peripheral Vascular v. W.L. Gore &*

19   *Assocs*., 2012 U.S. App. LEXIS 2612 (Fed. Cir. February 10, 2012), involved a jury finding of

20   willfulness, which as noted above is not present here.  *See Bard Peripheral Vascular v. W.L. Gore*

21   *Assocs*., 2010 U.S. Dist. LEXIS 144259 at *2 (D. Ariz. September 8, 2010) ("Since 1974, Dr.

22   Goldfarb has pursued the exclusive right to his discovery and Gore has exhausted every mechanism

23   to frustrate Dr. Goldfarb's ability to use and enjoy that right").

24        Finally, in *Mondis Tech., Ltd. v. Chimei Innolux Corp*., 2011 U.S. Dist. LEXIS 113147

25   (E.D. Tex. Sept. 30, 2011), the district court's *Georgia-Pacific* analysis only slightly increased the

26   post-trial royalty rate over what the jury awarded (from 0.5% to 0.75%), and it was not until the

27   court found that defendant's willfulness warranted "a strong enhancement" that it further increased

28   the award.  *Id*. at *38.  And of course in all cases, including both *Mondis* and *Datatreasury Corp. v.*

14

1  *Wells Fargo & Co.*, 2011 U.S. Dist. LEXIS 118443 (E.D. Tex. Aug. 2, 2011), the *Georgia-Pacific*

2  analysis is case-specific; other cases have awarded the same rates set by the jury.  *See, e.g., Orion*,

3  2008 U.S. Dist. LEXIS 108683 at *12-14 ("[Plaintiff] has not shown how the situation now is any

4  different than that presented at trial, which justified the two percent royalty rate. Accordingly, two

5  percent remains an appropriate royalty rate for postverdict infringement").

6        Because none of these cases supports the dramatic increase Warsaw proposes, its request

7  should be denied.

8  **III.  PRE-JUDGMENT INTEREST**

9        **A.  Any Award of Pre-Judgment Interest is Inappropriate**

10             **1.  The Jury's Award Is Presumed To Include Interest**

11       During trial, Warsaw presented two different damages calculations to the jury, both of which

12 included interest.  (Trial Tr., 1058:25-1063:2).  The verdict form gives no indication of whether or

13 how much interest the jury actually awarded.  (D.I. 397).  District courts have rejected awarding

14 prejudgment interest under similar circumstances.  *See Honeywell Int'l, Inc. v. Hamilton Sundstrand*

15 *Corp.*, 166 F. Supp. 2d 1008, 1041 (D. Del. 2001) ("At trial, Honeywell's expert, Julie Davis,

16 testified to the jury that she included prejudgment interest in her damages calculation.  In light of

17 this testimony, the court finds that the jury reasonably would have included prejudgment interest in

18 its damages award"); *Graco Children's Prods., Inc. v. Century Prods. Co.*, 1996 U.S. Dist. LEXIS

19 10356 at *104-107 (E.D. Pa. July 23, 1996) ("Graco has already asked for, and presumably

20 received, prejudgment interest from the jury in this case").

21       The *Graco* case is particularly instructive.  In that case, the plaintiff asked the jury to award

22 $3 million in lost profits damages, but the jury returned a verdict of $2.1 million.  *Id*.  The plaintiff

23 then asked for prejudgment interest, but the Court rejected that request, noting that because the

24 plaintiff repeatedly included interest in its damages calculations (both through its damages expert

25 and through closing arguments), the Court would presume the jury award included interest.  *Id*.  The

26 Court noted that "the parties could have solved the problem … if they had included a separate

27 interrogatory for prejudgment interest in their verdict form," but since they did not, the court said

28 that the plaintiff "shoulders the consequences of this confusion and uncertainty because it provided

1    the jury with damage figures that included interest estimates." *Id*. "Thus, this court will presume

2    that the jury's award included an interest augmentation and that an award of prejudgment interest

3    would constitute an unauthorized doubling of damages." *Id*.

4         Here, the parties vigorously disputed whether the question of interest should go to the jury,

5    and the Court ultimately determined that the jury should not be asked to decide the appropriate

6    interest **rate**.  (Trial Tr., 1959:16-1965:5).  However, the jury was not instructed to exclude interest.

7    And because Warsaw persisted in presenting damages figures to the jury that included interest, even

8    after this Court's ruling with respect to the rate, Warsaw shoulders the blame for any uncertainty,

9    and its request for prejudgment interest should be denied.

10              **2.**       **Warsaw's Delay in Filing Suit Bars Prejudgment Interest**

11         Another circumstance that justifies the denial of pre-judgment interest is "where the patent

12    owner has been responsible for undue delay in prosecuting the lawsuit."  *See Gen. Motors Corp. v.*

13    *Devex Corp.*, 461 U.S. 648, 656-57 (1983).  Here, Warsaw delayed for nearly four years between

14    the time when the accused CoRoent implants were first introduced (in October of 2004) and the

15    filing of this infringement lawsuit (in August of 2008), and three years after the launch of the

16    MaXcess II retractor.  This delay by itself justifies the denial of pre-judgment interest.  *See Crystal*

17    *Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001)

18    (affirming district court's denial of pre-judgment interest where patentee delayed for two years).

19

20              **B.**      **An Award of Interest Using the California State Statutory Rate is Inappropriate**

21         Warsaw writes that "[f]ederal district courts throughout California have consistently applied

22    the California statutory rate of 7% simple interest to compensate patent owners for the lost use of

23    monetary awards for patent infringement."  (D.I. 463 at 18).  But the California Constitution is clear

24    that this provision only applies to actions in state court: "the rate of interest on any judgment

25    **rendered in any court of the State** shall be 7 percent per annum."  Cal. Const. Art. XV § 1

26    (emphasis added).  While the Court certainly has broad discretion to choose the appropriate rate,

27    federal law (not state law) controls the Court's decision.  *See Koehler v. Pulvers*, 614 F. Supp. 829,

28    850 (S.D. Cal. 1985) (noting "federal law controls" the appropriate rate of prejudgment interest).

16

1   And in the Ninth Circuit, "the interest rate prescribed for post-judgment interest under 28 U.S.C.

2   § 1961 is appropriate for fixing the rate of prejudgment interest **unless the trial judge finds, on**

3   **substantial evidence, that the equities of that particular case require a different rate**." *See*

4   *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001) (emphasis added).

5   Applying Ninth Circuit law, courts in this district have based pre-judgment interest calculations on

6   28 U.S.C. § 1961.  *See Excelsior College v. Frye*, 2007 WL 672517, at *4 (S.D. Cal. Feb. 21, 2007)

7   (applying the Ninth circuit rule that pre-judgment interest rate is the rate specified by 28 U.S.C. §

8   1961 in a copyright infringement action).  The Federal Circuit has upheld the award of pre-

9   judgment interest at this rate.  *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997)

10  ("As to the choice of prejudgment interest rate, the district court, in exercises of its discretion,

11  awarded prejudgment interest and set the rate at the U.S. Treasury bill rate, compounded annually").

12          Here, Warsaw makes no showing as to why a higher interest rate is appropriate – it simply

13  selects the state statutory rate and applies it without justification or support.  Because Warsaw has

14  not made a finding sufficient to justify application of any higher rate, its request for 7% interest

15  should be denied.[4]

16

17  **IV.    WARSAW'S REQUEST FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT
             SHOULD BE DENIED**

18          Warsaw improperly uses this narrowly-focused briefing to seek leave to file an amended

19  complaint adding two additional Medtronic entities to this lawsuit.  Warsaw's request should be

20  denied for at least three reasons.

21          First, Warsaw gives no explanation for why these two parties should be added to this case.

22  Either Warsaw hopes for a double (or triple) recovery by adding these two additional entities, or it

23  hopes to cure the defects in its damages case, which only highlights the fact that it has sought

24  damages for entities that lack the standing to recover them.  *See Spine Solutions, Inc. v. Medtronic*

25  *Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-19 (Fed. Cir. 2010) ("Because we conclude that

26

27  ─────────────────────
    [4]  As noted in NuVasive's opening brief, NuVasive's damages expert calculated interest using the
    rate specified in 28 U.S.C. § 1961, compounded monthly, resulting in prejudgment interest of

28  $1,286,488 for NuVasive's presently adjudged infringement of the Warsaw patents, and $3,551 for
    MSD USA's adjudged infringement of the NuVasive '236 patent.

neither Synthes Spine nor Synthes, Inc. has standing to sue on the '071 patent, SSI is not entitled to recover for any lost profits suffered by Synthes Spine or Synthes, Inc.").

Second, Warsaw does not attach the agreements that purportedly give these two entities standing to sue for infringement on their own behalf, which gives the Court no ability to evaluate whether in fact these parties have the necessary standing. *See Id.* ("the district court abused its discretion in allowing SSI to amend its complaint to add Synthes Spine as a co-plaintiff").

Third, Warsaw does not address the impact that adding these additional entities may have on the going forward royalty rate. Presumably, if two additional parties were participants in the post-suit hypothetical negotiation, it would have some impact on the appropriate royalty rates. Yet neither party has analyzed what that impact would be. Adding these parties thus unnecessarily complicates Warsaw's ongoing royalty request, which is yet another reason to deny it.

This Court entered a scheduling order on October 27, 2009 that set December 9, 2009 as the last day to file amended pleadings. (*See* D.I. 97). "[O]nce the district court has issued a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 establishing a timetable for amending pleadings, leave to amend may not be granted unless the plaintiff first establishes good cause for departure from the scheduling order's deadlines under Rule 16(b)(4)." *See Jones v. Felker*, 2011 U.S. Dist. LEXIS 123893 at *3-4 (E.D. Cal. October 26, 2011), *citing Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Because Warsaw's request is untimely, because Warsaw has not even attempted to show good cause necessary for allowing the amendment, and because Warsaw has not provided the evidentiary basis to evaluate whether these entities have standing, Warsaw's request for leave to file a supplemental complaint should be denied.

## V.   CONCLUSION

For the reasons stated above and in NuVasive's opening brief, the Court should decline to award prejudgment interest, and should decline to award a going-forward royalty at this time. If the Court is inclined to grant an ongoing royalty, it should do so at a rate of no more than 2% for the '586 patent, no more than 3% for the '933 patent, no more than 10% for the '973 patent, and 5.5% for the '236 patent, the rates awarded by the jury. Warsaw's rates, which are unsupported and

egregious, should be rejected.  If the Court is inclined to grant prejudgment interest, it should do so at the rate specified in 28 U.S.C. § 1961, not the California statutory rate.  Finally, Warsaw's request to file a supplemental complaint should be denied.

Dated:  February 24, 2012

FISH & RICHARDSON P.C.

By:  _s/ Jonathan J. Lamberson_
       Jonathan J. Lamberson

Attorneys for Defendant/Counterclaimant/
Counterclaim Defendant NUVASIVE, INC.

19

1

## CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that a true and correct copy of the above and foregoing

3

document has been served on February 24, 2012 to all counsel of record who are deemed to have

4

consented to electronic service via the Court's CM/ECF system per Civ LR 5.4(d).  Any other

5

counsel of record will be served by U.S. mail or hand delivery.

6

7

By:   *s/ Jonathan J. Lamberson*
Jonathan J. Lamberson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:08-CV-1512 MMA (MDD)