Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
Alexander F. MacKinnon (S.B.N. 146883)
alexander.mackinnon@kirkland.com
Nimalka R. Wickramasekera (S.B.N. 268518)
nimalka.wickramasekera@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff/Counterclaim
Defendant/Counterclaimant

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>NUVASIVE, INC.,<br><br>        Defendant.<br><br>NUVASIVE, INC.,<br><br>        Counterclaimant,<br><br>    vs.<br><br>MEDTRONIC SOFAMOR DANEK USA, INC.<br><br>        Counterclaim Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 3:08-CV-01512-MMA (MDD)<br><br>**WARSAW'S OPPOSITION BRIEF REGARDING ONGOING ROYALTIES AND PREJUDGMENT INTEREST**<br><br>Date:  TBD<br>Time:  TBD<br>Judge:  Honorable Michael M. Anello |

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ............................................................................ 1

II.    ONGOING ROYALTIES ............................................................... 2

     A.    The Federal Circuit Does Not Require Actual Negotiations As A Prerequisite To Ongoing Royalties. ...................................................... 2

     B.    The Federal Circuit Has Rejected NuVasive's Approach Based On A Pre-Infringement *Georgia-Pacific* Analysis. .................................... 5

     C.    NuVasive's Proposed Royalty Rates Would Not Fairly And Fully Compensate Warsaw For Post-Verdict Infringement. ......................... 9

III.   PREJUDGMENT INTEREST ...................................................... 11

     A.    This Court Properly Found That The Verdict Did Not Include Prejudgment Interest. ............................................................................ 11

     B.    Warsaw Is Entitled To Prejudgment Interest. ..................................... 13

     C.    NuVasive's Near-Zero Rate For Pre-Judgment Interest Should Be Rejected. ............................................................................................... 13

IV.   CONCLUSION ............................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008) ..................................................................5, 6, 8

*Amado v. Microsoft Corp.*,
   No. SA CV 03-242 DOC (ANx), 2008 WL 8641264 ................................................7

*Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*,
   153 Fed. Appx. 730 (Fed. Cir. 2005)............................................................4

*Bard Peripheral Vascular, Inc. et al. v. W.L. Gore & Assoc., Inc.*,
   No. 2010-1510, 2012 WL 414373 (Fed. Cir. Feb. 10, 2012)............................4, 6, 8

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*,
   346 Fed. Appx. 580 (Fed. Cir. 2009)............................................................4

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*,
   No. CV-03-0597-PHX-MHM, 2009 WL 920300 ...................................................14

*Boston Scientific Corp. v. Johnson & Johnson*,
   No. C 02-00790 (SI), 2009 WL 975424 (N.D. Cal. Apr. 9, 2009) ...........................8

*Conceptus, Inc. v. Hologic, Inc.*,
   No. C 09-02280 WHA, 2012 WL 44064 (N.D. Cal. Jan. 9, 2012) .......................3, 11

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ..................................................................13

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-CV-72 DF, 2010 WL 5140718 (E.D. Tex. Sept. 27, 2010) ......................13

*DSU Medical Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) ..................................................................12

*General Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983)..............................................................................9, 12

*GracoChildren's Prods., Inc. v. Century Prods. Co.*,
   No. Civ. A. 93-6710, 1996 WL 421966 (E.D. Pa. July 23, 1996) .........................12

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
   166 F. Supp. 2d 1008 (D. Del. 2001) .......................................................12

*IMX, Inc. v. LendingTree, LLC*,
   469 F. Supp. 2d 203 (D. Del. 2007) .......................................................13

*Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*,
   No. 04-5172 (JAP), 2009 WL 512156 (D.N.J. Feb. 27, 2009) ...........................6

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
   862 F.2d 267 (Fed. Cir. 1988) ..................................................................13

ii

*Mondis Tech. Ltd. v. Chimei Innolux Corp. et al.*,
   Civil Action No. 2:11-cv-378-TJW-CE (E.D. Tex. Sept. 30, 2011).......................3, 4

*Orion IP, LLC v. Mercedes-Benz USA, LCC*,
   Case No. 6:05 CV 322,
   2008 U.S. Dist. LEXIS 108683 (E.D. Tex. Mar. 28, 2008) ...................................7, 8

*Oscar Mayer Foods Corp. v. Conagra, Inc.*,
   869 F. Supp. 656 (W.D. Wisc. 1994) ...................................................................3, 9

*Paice LLC v. Toyota Motor Corp.*,
   609 F. Supp. 2d 620 (E.D. Tex. 2009).........................................................5, 6, 7, 9

*Paice LLC v. Toyota Motor Corp.*,
   504 F.3d 1293 (Fed. Cir. 2007) .........................................................................2, 4

*Presidio Components Inc. v. Am. Technical Ceramics Corp.*,
   723 F. Supp. 2d 1284 (S.D. Cal. 2010) ...................................................................14

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   No. 08-CV-335-IEG (NLS), 2010 WL3070370 (S.D. Cal. Aug. 5, 2010) .........3, 7, 8

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) ...............................................................................9

*Schneider (Europe) AG v. SciMed Life Systems, Inc.*,
   26 F.3d 140 (Fed. Cir. 1994) (unpublished) ................................................................4

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
   No. 2:04-cv-01971-MCE-EFB, 2009 WL 981843 (E.D. Cal. Apr. 13, 2009)..........14

**Statutes**
28 U.S.C. §1961...........................................................................................................12

**Other Authorities**
Fed. R. Civ. P. 1 ........................................................................................................3

# TABLE OF EXHIBITS

| EXHIBIT NO. | PAGE NO. |
|:---:|:---:|
| A | 1 - 15 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.       INTRODUCTION

The Court has instructed the parties to brief (i) the ongoing royalties that "will be imposed" for post-verdict infringement and (ii) "an appropriate rate of prejudgment interest."  (Dkt. 460.)  In response, NuVasive challenges the premises of the Order by arguing that the Court need not determine ongoing royalties, but should only direct the parties to try to negotiate royalty rates until the upcoming appeal is resolved. NuVasive also urges that the Court should reverse its prior finding and deny prejudgment interest altogether.  NuVasive's positions should be rejected as contrary to the law and insufficient to provide full compensation for its pre-and post-verdict infringement.

**Ongoing Royalties.**  No rule requires actual negotiations between the parties before the Court can establish ongoing royalties, and the chasm between the parties' respective proposals shows that such negotiations would be a futile gesture, particularly given the stated position of NuVasive's CEO that NuVasive has no interest in settlement.  Following Federal Circuit law, Warsaw's opening brief (and associated expert declaration) reviewed the changes to the *Georgia-Pacific* factors in the post-verdict world and arrived at minimum royalty rates consistent with the overall verdict.  Warsaw also presented evidence showing that NuVasive can afford to pay those rates, and the record indicates that NuVasive has other (non-accused) products that could be used with its XLIF procedures.  In addition, an award of ongoing royalties that provides full compensation to Warsaw would avoid the time and expense of a second trial for post-verdict damages.

NuVasive's opening brief takes a very different tack.  It rehashes *Georgia-Pacific* factors using the pre-infringement record from trial but submits no evidence or expert analysis of the post-verdict scenario.  NuVasive also fails to address its ability to pay for ongoing infringement.  Instead, NuVasive simply assumes that the verdict changed nothing and that the parties' negotiating positions have not been altered since it began infringing in 2004.  As a result, NuVasive's proposed rates would yield only

a small fraction of the per-unit compensation provided by the total damages verdict and would never be accepted by Warsaw as compensation for deliberate, ongoing infringement by a major competitor.  Moreover, if such inadequate rates were adopted by the Court, Warsaw would have no choice but to seek full compensation for post-verdict infringement via a second trial.

**Prejudgment Interest.**  NuVasive's arguments on this issue are similarly flawed.  Awards of prejudgment interest are the rule, and NuVasive fails to justify any exception to that rule.  Having previously found that the jury did not include prejudgment interest in its damages calculations, the Court should reject NuVasive's untimely challenge to that finding and its argument for near-zero interest rates.  Such rates for prejudgment interest are inconsistent with the opinion of NuVasive's own expert, California district court precedent, and the goal of fair and full compensation.  As explained in Warsaw's opening brief, the equitable measure of the time value of money that Warsaw lost is the California statutory rate, and the Court should apply that rate to determine prejudgment interest.

## II.   ONGOING ROYALTIES

### A.   The Federal Circuit Does Not Require Actual Negotiations As A Prerequisite To Ongoing Royalties.

Notwithstanding the hyperbole of NuVasive's brief (Dkt. 462 at 1), there is no rule that parties "must" negotiate an ongoing royalty after a jury verdict of infringement.  According to the Federal Circuit in *Paice* "the district court ***may*** wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty."  *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007).  While Judge Rader's concurrence argued that negotiation should be required, it also recognized that the majority had ***not*** adopted such a rule:

> I write separately to express my opinion that in remanding to the district for reevaluation of the 'ongoing royalty' rate, this court should do more than suggest that 'the district court *may* wish to allow the parties to negotiate a license amongst themselves . . . before imposing an ongoing

2

royalty.'  Instead, this court should *require* the district court to remand this issue to the parties, or to obtain the permission of both parties before setting the ongoing royalty rate itself.

*Paice*, 504 F.3d at 1316 (Rader, J., concurring) (emphasis in original).  Accordingly, district courts since *Paice* have routinely determined ongoing royalty rates without first requiring that the parties attempt to negotiate a license.  *See, e.g.*, *Conceptus, Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012); *Mondis Tech. Ltd. v. Chimei Innolux Corp. et al.*, Civil Action No. 2:11-cv-378-TJW-CE, at 6 n.3 (E.D. Tex. Sept. 30, 2011); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL3070370 at *3 (S.D. Cal. Aug. 5, 2010).

In the present case, both parties have submitted briefs regarding the appropriate rates for ongoing royalties (per the Court's January 26, 2012 Order, Dkt. 460), and there is no reason for the Court to delay its determination of those rates.  The parties' opening briefs reflect vastly different views on the appropriate rates for post-verdict infringement by NuVasive.  Warsaw contends that a post-verdict hypothetical negotiation would consider the facts as they have changed since the eve of NuVasive's first infringement.  At a minimum, to provide compensation for NuVasive's post-verdict infringement, an ongoing royalty rate should be extrapolated from the jury's total verdict. *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wisc. 1994). Warsaw thus proposes that ongoing royalty rates of 36% for the '973 patent, 11% for the '933 patent, and 7% for the '586 patent are ***the minimum*** required to compensate Warsaw for NuVasive's post-verdict infringement. (Dkt. 463 at 21.)  NuVasive, by contrast, simply reargues the same pre-verdict *Georgia-Pacific* factors from the trial and concludes that "[i]f the Court is inclined to grant an ongoing royalty, it should do so at a rate of ***no more than*** 2% for the '586 patent, no more than 3% for the '933 patent, [and] no more than 10% for the '973 patent . . . ." (Dkt. 462 at 13.)

In light of the significant gap between their proposed rates, and the parties'

3

strongly held positions, NuVasive's demand that negotiations "must" take place is nothing more than a delay tactic. Indeed, NuVasive's CEO has been unequivocal that he will be inflexible in post-verdict negotiations with Warsaw: "I *do* want to be perceived as **bull headed** relative to settlement." (Dkt. 463-17 at 12.) In light of these circumstances, requiring negotiations that have little hope of success would be contrary to the just and speedy resolution of the parties' dispute. Fed. R. Civ. P. 1; *Mondis*, Civil Action No. 2:11-cv-378-TJW-CE, Dkt. No. 11 at 6 n.3. Having ordered the parties to brief the amount of ongoing royalties that "will be imposed" for post-verdict infringing sales, the Court should decide that issue now.

NuVasive's planned appeal is certainly no ground on which to delay the royalty determination. NuVasive cites the Federal Circuit in *Paice*, yet fails to note that in that case the district court determined an appropriate ongoing royalty rate before appeal. *Paice*, 504 F.3d at 1313-14. So too did the district court in *Bard*, which was recently affirmed by the Federal Circuit. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, No. 2010-1510, 2012 WL 414373, at *18-19 (Fed. Cir. Feb. 10, 2012). Likewise here, there is no reason for additional delay while NuVasive pursues an appeal. To the contrary, judicial efficiency is served by deciding the royalty issue now, so that all issues concerning Phase I of this litigation can be available for review by the Federal Circuit in the upcoming appeal. Indeed, without resolution of the outstanding issues concerning post-verdict compensation, Phase I of this case would not be in position for appeal. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 346 Fed. Appx. 580 (Fed. Cir. 2009); *Schneider (Europe) AG, Inc. v. SciMed Life Systems, Inc.*, 26 F.3d 140 (Fed. Cir. 1994) (unpublished); *see also Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 153 Fed. Appx. 730 (Fed. Cir. 2005) ("To enter an appealable Rule 54(b) judgment, the district court must have decided all pertinent issues regarding the claim, not just liability.").

**B.    The Federal Circuit Has Rejected NuVasive's Approach Based On A Pre-Infringement *Georgia-Pacific* Analysis.**

As a fall-back position, NuVasive argues that the Court should simply adopt the jury's pre-verdict royalty rates for ongoing royalties. Yet NuVasive provides no evidence to support its position that the factors relevant to a hypothetical negotiation—and the parties' bargaining positions—would have been the same in September 2011 post-verdict as they were in May 2004 when infringement began.  As shown by the evidence submitted with Warsaw's opening brief, the economic and legal relationship between the parties changed dramatically between the eve of first infringement and the jury's verdict. (Dkt. 463 at 4-15.)  During those seven years, NuVasive grew from a start-up company without a proven product to the world's fifth largest spine company with a full-line of products—many of which infringe, compete with Warsaw products, and take profits from Warsaw's bottom line.  (*Id.*) Significantly, NuVasive has been found to infringe three valid Warsaw patents, and the jury determined that NuVasive's infringement caused Warsaw to lose tens of millions of dollars in profits.  (Dkt. 397.)

The Federal Circuit and district courts across the country have held that the changed circumstances between pre-infringement and post-verdict hypothetical negotiations must be considered when determining an ongoing royalty rate.  *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008) ("Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty.  Once a judgment of validity and infringement has been entered, however, the [damages] calculus is markedly different because different economic factors are involved."); *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 623-24 (E.D. Tex. 2009) ("The Federal Circuit has made it clear that damages for past infringement are separate and distinct from damages for future acts of infringement and may require different royalty rates given the change in the parties' legal relationship, among other factors.") (*citing*

1   *Amado*, 517 F.3d at 1362 (Rader, J., concurring)).[1]

2   NuVasive acknowledges this fundamental legal principle in its opening brief

3   ("The Court should consider whether the post-trial hypothetical negotiation differs in

4   any material respect from what the parties presented during trial"), but then fails to

5   present any evidence to support its claim that nothing has changed.[2]  (Dkt. 462 at 5.)

6   Instead, NuVasive only re-argues the same pre-verdict evidence on which its damages

7   expert relied at trial.  (Dkt. 462 at 5.)  NuVasive's exclusive reliance on pre-verdict

8   evidence contravenes Federal Circuit law and leads to its erroneous proposal that the

9   Court simply adopt the jury's pre-verdict royalty rates as ongoing royalty rates.

10   *Paice*, 609 F. Supp. 2d at 626 ("A systemic flaw throughout Toyota's analysis is its

11   overt failure to consider the change in legal status of the parties that resulted from the

12   verdict and judgment in this case.").

13   District courts applying the Federal Circuit decisions in *Amado* and *Paice* have

14   consistently found that a pre-verdict *Georgia-Pacific* analysis misses the mark if used

15   to determine royalties for post-verdict infringement.  *Joyal Prods., Inc. v. Johnson*

16   *Elec. N. Am., Inc.*, No. 04-5172 (JAP), 2009 WL 512156, at *13 (D.N.J. Feb. 27,

17   2009) ("Case law is clear that the calculus for determining a post judgment royalty is

18   not the same as that for determining a reasonable royalty based upon pre-judgment

19   infringement.").  Rather, courts have applied a "modified *Georgia-Pacific*" analysis

---

[1]  The Federal Circuit recently affirmed a district court decision that applied its guidance in *Amado* to determine an ongoing royalty in a case where the patentee's motion for permanent injunction had been denied.  *Bard*, 2012 WL 414373, at *18 (*citing Amado*, 517 F.3d at 1361-62); *see also Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 626-27 (E.D. Tex. 2009) ("Injunction or no injunction, pre-suit and post-judgment licensing negotiations are necessarily different due at least to the change in legal status of the parties.  Once judgment is entered, ongoing infringement by the adjudged infringer is willful; that factor, along with the potential for enhancement, the potential impact of *res judicata*, and many additional factual factors significantly change the ongoing royalty negotiation calculus.").

[2]  NuVasive should not be permitted to "sand bag" Warsaw with new evidence regarding the post-verdict hypothetical negotiation (such as an expert declaration) for the first time with its response brief.  The late submission of any evidence would be unfairly prejudicial to Warsaw and would be in violation of NuVasive's obligation to provide evidentiary support with its initial brief.  This is particularly true since the Court's January 26 Order expressly provides that no reply briefs shall be filed.  (Dkt. 460.)

that focuses on the changed economic and legal circumstances that would affect a post-verdict negotiation between the patentee and adjudged infringer.  For example, the district court in *Paice* on remand adopted such a post-verdict analysis.  *Paice*, 609 F. Supp. 2d at 624.  In like fashion, the district court in *Bard*, after considering *Paice* and *Amado*, adopted a post-verdict approach, which was subsequently affirmed and praised by the Federal Circuit for its thorough analysis.  *Bard*, 2012 WL 414373, at *18.  Ignoring all of this precedent, NuVasive urges the Court to adopt an analysis that district courts have rejected in light of the Federal Circuit's guidance in *Paice* and *Amado*.  *Amado v. Microsoft Corp.*, No. SA CV 03-242 DOC (ANx), 2008 WL 8641264, at *11 ("The Federal Circuit indicated that it was error for the Court to base the reasonable royalty on the pre-judgment [royalty] award found by the jury . . . . If the Court applies the [pre-verdict] *Georgia-Pacific* factors, it runs the risk of skewing the analysis towards a pre-judgment framework.").

NuVasive argues that "[i]n many cases, courts have found that (once a permanent injunction is denied) the bargaining position of the parties does not effectively change post-trial," but cites only two cases, neither of which support a presumption of no change in the post-verdict *Georgia-Pacific* factors.  (Dkt. 462 at 5 (*citing Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL3070370 (S.D. Cal. Aug. 5, 2010) and *Orion IP, LLC v. Mercedes-Benz USA, LCC*, Case No. 6:05 CV 322, 2008 U.S. Dist. LEXIS 108683 (E.D. Tex. Mar. 28, 2008).)  In *Presidio*, the court did not state that there could never be changed circumstances in the post-verdict negotiations—only that no changes had been demonstrated by the evidence before it.  *Presidio*, 2010 WL3070370, at *5-6 ("Balancing all these factors together, they do not weigh in favor of either party.").[3]

---

[3] The district court in *Presidio* set an ongoing royalty rate without requiring the parties to negotiate.  *Id.* at *3 ("In light of the parties' strongly held positions in this case, and in light of their extremely divergent views as to the appropriate royalty rate, the Court is convinced that requiring them to negotiate is not likely to be fruitful.")  Moreover, the district court ultimately set the ongoing royalty rate at the rate the patentee's expert considered reasonable.  *Id.* at *6.

And in *Orion*, the district court found that the patentee "has not shown how the situation now is any different than that presented at trial," leading it to conclude the jury's royalty rate for pre-verdict infringement was appropriate as an ongoing royalty rate. *Orion*, 2008 U.S. Dist. LEXIS 108683, at *14. In both cases, the courts' assessment of whether circumstances had changed in the post-verdict world was based on the evidence presented by the parties in those cases, and did not represent an absolute rule or presumption.[4]

The weight of authority, including the Federal Circuit's February 10, 2012 decision in *Bard*, recognizes that a jury finding of liability significantly changes the parties' bargaining positions, even when an injunction has been denied. *Bard*, 2012 WL 414373, at *18-19 (*citing Amado*, 517 F.3d at 1361-62 ("Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment has been entered, however, the [damages] calculus is markedly different because different economic factors are involved.")); *Boston Scientific Corp. v. Johnson & Johnson*, No. C 02-00790 (SI), 2009 WL 975424, at *3 (N.D. Cal. Apr. 9, 2009) ("We must assume that the jury's finding [of liability] means something."). Thus, the district court in *Bard* denied an injunction, but considered the possibility of a second lawsuit in which the infringer Gore "potentially faces stiffer losses," when deciding the appropriate ongoing royalty rate. *Bard*, 2012 WL 414373, at *18. The Federal Circuit cited that consideration, among others, with approval in affirming the district court's determination of an ongoing royalty. *Id.* at *18-19.

Here, Warsaw's opening brief presented compelling evidence of changes in the *Georgia-Pacific* factors and the parties' bargaining positions that have occurred

---

[4] Moreover, in each case the patentee's bargaining position was weakened by the fact that it did not practice the patented invention and was entirely dependent on licensing revenue from infringing sales to monetize its asserted patent. *Presidio*, 2010 WL 3070370, at *6 ("In this case, because Presidio does not practice the '356 patent and does not have any other licensees, it is similarly depended (sic) on the infringing 545L capacitors as the sole source of profit."); *Orion*, 2008 U.S. Dist. LEXIS 108683, at *12 ("Orion's sole purpose is to license existing patents.").

between the pre-infringement and post-verdict hypothetical negotiations.  (Dkt. 463.)
Warsaw correctly assessed ongoing royalties in light of the changed circumstances in
the post-verdict world.  NuVasive presented evidence on none of this.  Because
NuVasive's proposed rates are based solely on pre-infringement facts and are
unsupported by any evidence regarding post-verdict negotiations, it would be plain
error to adopt them.

### C.   NuVasive's Proposed Royalty Rates Would Not Fairly And Fully Compensate Warsaw For Post-Verdict Infringement.

Section 284 of Title 35 directs the Court to determine damages that will fully
compensate the patent owner for any infringing sales not considered by the jury.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*citing General
Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983)).  The purpose of an ongoing
royalty is to compensate the patent holder for the infringer's ongoing and
unauthorized use of its intellectual property.  *Paice*, 609 F. Supp. 2d at 630 ("Even
though a permanent injunction may no longer be proper in many patent cases in light
of *eBay*, an ongoing royalty rate must still adequately compensate a patentee for
giving up his right under the law to exclude others from making, using, selling,
offering for sale, or importing his invention.").  Thus, an ongoing royalty should
account for the jury's entire damages award when determining compensation for post-verdict infringement.  *Oscar Mayer*, 869 F. Supp. at 668 (ordering damages for post-verdict infringement at a rate "extrapolated from the jury's verdict," most of which
"was attributable to lost profits").  Anything less would reward NuVasive's
infringement with a license at terms that Warsaw would never agree to in a post-verdict world and would create an incentive for others to infringe as a means to extract
a license from unwilling licensors.  *Paice*, 609 F. Supp. 2d at 628 ("Failing to consider
the parties' changed legal status would create an incentive for every defendant to fight
each patent infringement case to the bitter end because without consideration of the
changed legal status, there is essentially no downside to losing.").

The jury determined that Warsaw was entitled to recover its lost profits.  (Dkt 397.)  As Dr. Neels explained at trial, two types of compensation are necessary to fully compensate Warsaw:  (1) lost profits for infringing sales that caused Warsaw to lose sales; and (2) a royalty on other infringing sales for which Warsaw could not claim lost profits.  (Tr. at 1013:2-25 (Neels).)[5]  NuVasive's proposed ongoing royalty rates account only for the royalty component of the jury's verdict and would not compensate Warsaw to the full extent of the verdict.  Indeed, under NuVasive's proposal, Warsaw's per-unit compensation for post-verdict infringement would be 70% less than that awarded by the jury's verdict.  (Dkt. 463 at 13.)  In contrast, the rates proposed in Warsaw's opening brief take into account the changed circumstances of post-verdict negotiations and provide a per-unit compensation that corresponds directly to the jury's award.  (Dkt. 463 at 14.)  Nothing less would fairly compensate Warsaw, and no rational patent owner would willingly agree to a fraction of the compensation determined by the jury when full lost profits and enhancement for willfulness could be sought in a separate trial.

Finally, Warsaw's opening brief (and the declaration of Dr. Neels) analyzed NuVasive's ability to pay and demonstrated that NuVasive could pay the rates proposed by Warsaw.  (Dkt. 463 at 14-15.)  NuVasive's brief is notably silent on this issue, perhaps because of its high profit margins or because of Mr. Lukianov's post-verdict pronouncements on NuVasive's ability to pay the judgment and any further royalties.  In any event, additional evidence is now in the record regarding NuVasive's ability to use non-infringing products with its XLIF surgical procedures.  This evidence emphasizes the options available to NuVasive if it believes an ongoing royalty rate is higher than it prefers to pay.

As shown in Warsaw's recent motion for reconsideration, NuVasive has changed its web site to indicate that non-accused CoRoent implants may be used in XLIF procedures.  (Dkt. 464-1 at 2-3.)  In response to that motion, NuVasive

_____
[5] All pages of the trial transcript cited in this brief are attached as Exhibit A.

submitted declarations of two individuals, including Mr. Patrick Miles who testified during the jury trial that the CoRoent XL implant was a relatively insignificant feature of the XLIF procedure.  (Tr. at 415:9-22 (Miles).)  Those documents may be most significant for what they do *not* say.  NuVasive and its declarants do not deny that NuVasive purposefully changed its website—in the section intended for view by surgeons and other health care providers.  (Dkt. 466-2 ¶ 4.)  While Mr. Miles contests what NuVasive is "marketing," he does not challenge the fundamental premise that NuVasive believes this non-accused implant can be used in XLIF procedures.  (Dkt. 466-2.)  That fact is especially significant in light of Mr. Lukianov's recent statements that NuVasive had a contingency plan if the Court were to issue an injunction.  (Dkt. 464-5 at pages 22-23 of 46; Dkt. 464-6 at page 4 of 7.)  With various options available to it, NuVasive cannot credibly argue that the ongoing royalty rates proposed by Warsaw would prevent NuVasive from offering its XLIF procedure to physicians and patients.

Accordingly, the Court should set ongoing royalty rates that reflect the jury's full compensation to Warsaw:  36% for the '973 patent, 11% for the '933 patent, and 7% for the '586 patent.  (Dkt. 463 at 13-14.)  If the Court adopts these proposed rates, no further proceedings will be needed to determine compensation for NuVasive's continuing infringement.  If NuVasive's proposal were adopted (or other rates that do not provide fair compensation), Warsaw would have no choice but to pursue complete relief for the post-verdict infringement via a second trial seeking its lost profits, attorney fees, and enhancement for willfulness.  *See Conceptus*, 2012 WL 44064, at *4.

## III.  PREJUDGMENT INTEREST

### A.  This Court Properly Found That The Verdict Did Not Include Prejudgment Interest.

Although the Court requested briefing on the appropriate prejudgment interest rate, NuVasive first challenges the Court's finding that the jury did not include

prejudgment interest in its damages calculations.  (Dkt. 462 at 11-12.)  At the outset,
NuVasive is procedurally wrong.  It effectively seeks reconsideration of the Court's
order denying JMOL on the prejudgment interest issue—without even attempting to
meet the requirements for reconsideration.  (Dkt. 460.)  For this reason alone,
NuVasive's argument should be rejected.

NuVasive's challenge also lacks substantive merit.  Prejudgment interest
"should ordinarily be awarded absent some justification for withholding such an
award."  *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).  Neither
case cited by NuVasive supports a deviation from that fundamental rule.  In
*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008 (D. Del.
2001), the court denied prejudgment interest on a price erosion claim because the
patentee's damages expert testified that she had already included prejudgment interest
in her calculation of these damages.  *Id.* at 1041.  In this case, Dr. Neels presented his
damages calculations both with and without the time value of money.  (Tr. at 1026:10-
15, 1038:23-1039:4, 1047:17-22, 1062:4-18 (Neels).)  NuVasive's expert economist,
Dr. Sullivan, also presented his damages calculations without prejudgment interest.
(Tr. at 1963:19-1964:18.)  Because the damages awarded to Warsaw are different
from what either party's expert calculated, there is no basis to presume that the jury
included prejudgment interest in its damages award.  Rather, any uncertainty
regarding the jury's damages award should be resolved against NuVasive, the
adjudged infringer.  *See DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1309 (Fed.
Cir. 2006).

*GracoChildren's Prods., Inc. v. Century Prods. Co.*, No. Civ. A. 93-6710, 1996
WL 421966 (E.D. Pa. July 23, 1996) is also off-point because in that case, plaintiff's
expert and its trial counsel both urged the jury to award prejudgment interest on top of
a lost profits award.  *Id.* at *34-35.  In the present case, the parties specifically agreed
to remove an instruction regarding prejudgment interest from the jury charge based on
the understanding that the Court would award prejudgment interest after trial.  (Tr. at

1961:4-20; 1965:2-5.)  And neither counsel argued the issue of prejudgment interest to the jury.  NuVasive's contention that the Court must presume that the jury included prejudgment interest in its damages award flies in the face of the record at trial and should be rejected.

**B.  Warsaw Is Entitled To Prejudgment Interest.**

NuVasive next argues that the Court should deny Warsaw prejudgment interest because of an alleged four-year delay in filing suit.  (Dkt. 462 at 12.)  However, NuVasive makes no contention, and presents no evidence, that the alleged delay caused it any prejudice.  That failure dooms NuVasive's argument.  *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) ("Bare allegations can not suffice to counter to controlling authority stating that prejudgment interest ordinarily should be awarded.") (*citing General Motors*, 461 U.S. at 655-57); *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988) (delay does not justify denial of prejudgment interest absent proof of prejudice); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 5140718, at *5 (E.D. Tex. Sept. 27, 2010).

The *Crystal Semiconductor* case (cited by NuVasive) involved circumstances of strategic delay and prejudice that are far from the present facts.  *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001).  There, the district court denied prejudgment interest based on a finding that the patentee had intentionally delayed filing suit against the accused infringers as a "litigation tactic."  *Id.* at 1361-62.  The Federal Circuit also emphasized that the patentee engaged in delay so that it could pursue business opportunities with a company that had a relationship with the infringers.  *Id.*  Nothing comparable is found in the present case, and no basis exists to deny prejudgment interest.

**C.  NuVasive's Near-Zero Rate For Pre-Judgment Interest Should Be Rejected.**

Finally, NuVasive argues for prejudgment interest at near-zero rates based on

the statutory **post-judgment** interest rates set forth in 28 U.S.C. §1961.  (Dkt. 462 at 13.)  This argument is belied by the opinion of its own expert and the prior statements of NuVasive's counsel to the Court.  In his rebuttal report filed before trial, NuVasive's expert Dr. Sullivan opined that "the appropriate interest rate to use for calculating prejudgment interest is . . . . the prime rate . . . ."  (Neels Suppl. Decl. Ex. 3 at 28.)  Counsel for NuVasive similarly argued that the prime commercial lending rate was appropriate during the jury charge conference.  (Tr. at 1963:19-1964:4.)  Now that it faces an adverse verdict and an award of prejudgment interest, NuVasive does an about-face and instead argues for the statutory post-trial interest rate, which is currently at historically low, near-zero levels.  (Dkt. 462-1 at page 19 of 23.)

Courts in the Ninth Circuit have rejected the use of post-judgment interest rates for prejudgment purposes, especially when the post-judgment rate is at historic, near-zero values.  *See, e.g.*, *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, No. CV-03-0597-PHX-MHM, 2009 WL 920300, at *2 ("Thus, given the historically low rate of return on the T-Bill, the Court finds that the equities do not justify using the T-Bill rate in the instant case.").  Thus, recent California district court decisions have applied the California statutory rate, which is set at 7%.  *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1330 (S.D. Cal. 2010); *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, No. 2:04-cv-01971-MCE-EFB, 2009 WL 981843, at *7 (E.D. Cal. Apr. 13, 2009).  The California statutory rate is set in the California constitution and does not vary from year to year.  It has been repeatedly recognized as a reasonable and fair basis for calculating the time value of money lost as a result of infringement.  *Id.*  NuVasive's proposed prejudgment interest rates should be rejected.[6]

---

[6] For these reasons and those stated in its opening brief, Warsaw continues to believe the California statutory rate is the proper rate for prejudgment interest.  However, if the Court were to select the prime rate (as previously urged by NuVasive and its expert), we have submitted the supplemental declaration of Dr. Neels that applies the prime rate to the damages award in this case, compounded quarterly through February 10, 2012 (the date of the parties' opening briefs).  That calculation results in prejudgment interest due to Warsaw of $10,645,396.  (Neels Suppl. Decl. ¶ 10.)

14

**IV.    CONCLUSION**

For the reasons set forth above and in Warsaw's opening brief, NuVasive's proposed ongoing royalty rates should be rejected and the Court should adopt Warsaw's proposed rates or allow Warsaw to pursue supplementation of its complaint to seek full compensation for NuVasive's ongoing infringement.  Warsaw also requests that the Court award prejudgment interest based on the California statutory rate of 7% interest.


DATED:  February 24, 2012              Respectfully submitted,


                                       */s/ Alexander F. MacKinnon*
                                       Luke L. Dauchot
                                       Alexander F. MacKinnon
                                       Nimalka R. Wickramasekera
                                       KIRKLAND & ELLIS LLP

                                       Attorneys for Plaintiff,
                                       WARSAW ORTHOPEDIC, INC.

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, declare:

I am a citizen of the United States and am employed in the office of an attorney appearing in this action. I am over the age of 18 and not a party to this action. My business address is 333 South Hope Street, Los Angeles, CA 90071.

On February 24, 2012, true and correct copies of the foregoing document were served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4

☒    FEDERAL:  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 24, 2012, at Los Angeles, California.

*/s/ Alexander F. MacKinnon*
Alexander F. MacKinnon