Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
Alexander F. MacKinnon (S.B.N. 146883)
alexander.mackinnon@kirkland.com
Nimalka R. Wickramasekera (S.B.N. 268518)
nimalka.wickramasekera@kirkland.com
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff/Counterclaim Defendant/Counterclaimant
WARSAW ORTHOPEDIC, INC.; and
MEDTRONIC SOFAMOR DANEK USA, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC., <br><br>Plaintiff, <br><br>vs. <br><br>NUVASIVE, INC., <br><br>Defendant. <br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 3:08-CV-01512- CAB (MDD) <br><br>**WARSAW'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CLARIFY ORDER REGARDING ONGOING ROYALTIES PURSUANT TO L.R. 7.1(i)** <br><br>Date: August 16, 2013 <br>Time: 3:00 p.m. <br>Judge: Hon. Cathy Ann Bencivengo <br>Courtroom: 4C <br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

## I. INTRODUCTION

Pursuant to L.R. 7.1(i), Warsaw seeks clarification regarding the royalty bases to which the rates in the June 10, 2013 ongoing royalty order should be applied.[1] Since that order was entered, the parties have agreed that post-verdict ongoing royalties should be placed into escrow pending resolution of the upcoming appeals. As part of their discussions, however, a disagreement has arisen regarding the royalty bases to use in calculating these royalties. Warsaw and Sofamor Danek believe that the royalty bases used by Dr. Neels in his testimony (and submitted with Warsaw's briefing on ongoing royalties) should be used with the '973 and '933 patents, and the royalty base used by Dr. Sullivan in his testimony should be used for the '236 patent. NuVasive agrees with this approach as to the '973 and '236 patents, but disagrees regarding the royalty base for the '933 patent.

Warsaw contends that Dr. Neels' royalty base for the '933 patent was incorporated into the Court's determination of the ongoing royalty rate for that patent and should therefore apply to the escrow of ongoing royalties going forward. NuVasive, on the other hand, has taken the position that the Court decided a new royalty base for the '933 patent, even though NuVasive never briefed this issue in its ongoing royalties submissions. The Court established the ongoing royalty rate for the '933 patent at 55% of the rate Dr. Neels presented at trial. (Dkt. 592 ("Order") at 8.) Dr. Neels testified that the rates he determined, when applied to the royalty base he used, would adequately compensate Warsaw for its lost profits in connection with a hypothetical license negotiation at the onset of NuVasive's infringement. Deletion of items from Dr. Neels' royalty base—as now sought by NuVasive— would not comport with the Court's order and would substantially reduce the compensation for

---

[1] "A court may clarify its order for any reason." *Wahl v. Am. Sec. Ins. Co.*, No. C 08–0555 RS, 2010 WL 2867130, at *3 (N.D. Cal. July 20, 2010). This type of request "invite[s] interpretation, which trial courts are often asked to supply, for the guidance of the parties." *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985); *see also Boteilho v. Gregoire*, No. C09–5407BHS, 2010 WL 2720871, at *1 (W.D. Wash. July 8, 2010).

1  NuVasive's post-verdict infringement of the '933 patent.  It would also conflict with
2  NuVasive's position on the appropriate base for the '236 patent.  Accordingly,
3  clarification from the Court is requested in light of NuVasive's refusal to escrow post-
4  verdict ongoing royalties for the '933 patent using the royalty base presented by Dr.
5  Neels at trial.[2]

## II. THE ROYALTY BASES USED AT TRIAL AND IN THE ONGOING ROYALTY BRIEFING

In Warsaw's briefing on ongoing royalties, Dr. Neels explained that his post-verdict analysis applied the same royalty base as used in his reasonable royalty testimony at trial.  (Dkt. 463-10 (Neels Decl.) at 5, n.7 and Dkt. 463-22 (PX2154, admitted trial exhibit).)  For the '973 patent royalty base, Dr. Neels used the revenue to NuVasive from sales of infringing CoRoent XL implants.  For the '933 patent, NuVasive typically loans the accused MaXcess retractors for use in lateral procedures that infringe the method claim of that patent.  So that the royalty base for the '933 patent includes items that actually generate revenue to NuVasive from the infringing procedures, Dr. Neels used a base that consisted of revenue from:  (i) sales or leases of infringing MaXcess retractors; (ii) CoRoent XL procedures that infringe the '933 method claim, excluding implant revenues; and (iii) fixation (such as plates and screws) inserted during procedures that infringe the '933 method claim.[3]  (*Id.*; Ex. A[4] ("Trial Tr.") at 1057–58 (Neels).).  As shown in PX 2154, Dr. Neels did not "double count" CoRoent XL implants because he excluded that implant revenue from his '933 base.

---

[2] Because of the critical role this issue plays in determining ongoing royalty amounts under the '933 patent, a decision on the present motion is requested before entry of a final judgment and the subsequent appeals.

[3] Exhibit 2154 refers to "NuVasive XLP Revenue," which is revenue to NuVasive from the sales of fixation devices inserted during lateral procedures that infringe the '933 patent.  (Trial Tr. at 2043–44 (Sullivan).)

[4] Unless otherwise noted, all citations to exhibits are to the Declaration of Alexander F. MacKinnon In Support of Warsaw's Motion to Clarify Order Regarding Ongoing Royalties Pursuant to L.R. 7.1(i).

1   At trial, NuVasive's expert, Dr. Sullivan, applied a similar methodology in
2   determining the royalty base for the '236 patent.  Dr. Sullivan included revenue to
3   Sofamor Danek from:  (i) sales and leases of the NIM-Eclipse equipment; (ii) sales of
4   NIM Eclipse disposables; and (iii) sales of implants that were inserted during
5   procedures alleged to infringe the '236 method claims.  (Trial Tr. at 1973–1975
6   (Sullivan); 2048–49 (Sullivan).)  In briefing the ongoing royalty issue, NuVasive took
7   no position on the appropriate base for the '236 patent royalty (or the appropriate
8   royalty rate for that patent) because NuVasive never requested an ongoing royalty for
9   the '236 patent.

**III. CLARIFICATION IS NEEDED REGARDING THE ROYALTY BASES TO BE USED IN CALCULATING THE COURT-ORDERED ONGOING ROYALTIES**

Consistent with statements by the Court in prior hearings (*see* Ex. B (February 27, 2012 Hearing Tr.) at 27–28; Ex. C (March 14, 2012 Hearing Tr.) at 7, 16–19), the parties have agreed that ongoing royalties should be placed into escrow pending resolution of the upcoming appeals.  *See* Ex. D (6/19/13 email from Mr. Amon to Mr. MacKinnon).  To determine those amounts, the rates from the Court's order must be applied to the appropriate royalty bases.  Changes or differences in the base are just as important as the rate used in determining the total amount of royalties owed under a particular patent.  The parties have agreed on bases for the '973 and '236 patents, but differ materially regarding the '933 patent.  *Id.*  Based on the Court's methodology in determining the '933 ongoing royalty rate, Warsaw contends the royalty base should be the same as that used by Dr. Neels in his trial testimony on a reasonable royalty (and repeated in his declaration regarding ongoing royalties).  To do otherwise would further reduce the '933 royalties below the level the Court found necessary to compensate for NuVasive's ongoing infringement.  It would also upset the rationale underlying the Court's ongoing royalty decision.

The Court's analysis for the '933 patent includes a numerical calculation that begins with the 15% rate that Dr. Neels testified would have been acceptable to

1  Warsaw in a hypothetical negotiation when infringement began.  (Order at 8.)  The
2  Court's order then reduced Dr. Neels' 15% rate by a factor of 55% because 55%
3  represented (according to the Court's calculation) the reduction by the jury of the lost
4  profits claim presented by Dr. Neels.  (*Id.*)  This resulted in a royalty rate for the '933
5  patent of 8.25%.

6  But whether this royalty rate "reasonably compensate[s] Warsaw for the
7  ongoing use of its patents," as the Court determined, depends upon the royalty base to
8  which it is applied.  (*Id.*)  Under Dr. Neels' testimony, a particular rate would have
9  been acceptable to Warsaw only if applied to the appropriate base.  A rate without
10 reference to a base means nothing—even an appropriate royalty rate applied to an
11 unreasonably small base would result in an unreasonably small royalty amount.  To
12 keep the reduction at 55%, the same royalty base as that used by Dr. Neels for the
13 '933 patent must be applied.  If categories of revenue in the '933 royalty base are now
14 reduced or eliminated, as NuVasive suggests, this will necessarily reduce total
15 royalties to Warsaw well beyond the 55% reduction factor calculated by the Court, by
16 as much as an additional 50% or more.  Based on the logic of the Court's opinion, and
17 to prevent significant under compensation to Warsaw, the '933 royalty base from trial
18 should be used in calculating ongoing royalties for the post-verdict period.  Warsaw
19 has applied this same principle for all patents in the post-verdict time period, including
20 the '236 patent under which it is obligated for ongoing royalties during the appeal
21 process.

22 NuVasive, by contrast, has taken the position that Dr. Neels' base should be
23 used for the '973 patent and Dr. Sullivan's base should be used for the '236 patent.
24 *See* Ex. D.  Yet, according to NuVasive, Dr. Neels' base should not be used for the
25 '933 patent.  *Id.*  NuVasive's lack of consistency is unjustified.  The '236 patent, like
26 the '933, has method claims that the jury determined were infringed.  As Dr. Neels did
27 under the '933 patent, Dr. Sullivan included items in the royalty base for the '236
28 patent that are used with the accused method and generate revenue for Sofamor

Danek.  In the case of the '236 patent, it is implants; for the '933 patent, it is primarily fixation devices.  There was substantial evidence at trial—even from NuVasive's expert—regarding the significance of fixation to the infringing NuVasive procedures. (Trial Tr. at 2041:16–2045:8 (Sullivan); Ex. E at 3 ("Through extensive clinical evaluation and system refinement, we have designed each component of the XLP [fixation] platform to work seamlessly with the MaXcess retractor and the XLIF approach, resulting in an incredibly efficient system.").)  This type of royalty base— which goes beyond claimed items—is necessary to provide compensation for these method claims, in part, because the principal device use in the methods was often loaned and not sold.  In addition, a device could be sold once but used multiple times in the accused method.  *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) ("The jury was entitled to rely on evidence of bundling and convoyed sales in determining the proper scope of the royalty base."). Both economists recognized that use of this type of royalty base was appropriate for method patents under these circumstances.  (Trial Tr. at 1057 (Neels); Trial Tr. at 1973–75 (Sullivan); 2048–49 (Sullivan).)

NuVasive contends that the Court has already determined the appropriate royalty bases in its favor and points to the last paragraph of the conclusion of June 10, 2013 order.  Warsaw does not read the order in that way.  The order includes no discussion of the royalty base issue—although in footnote 3 it does reference Dr. Neels' trial calculations using his rates (and, thus, necessarily his royalty bases from trial).  Nor does the order suggest that the Court intended to reduce the overall level of recovery to Warsaw for infringement of the '933 patent beyond the 55% reduction factor.  Rather, the base for ongoing royalties under the '933 patent needs to be the same as the base used by Dr. Neels in his trial calculations—the same calculations from which the Court's ongoing royalty rate determination is derived.  The logic of the Court's order compels this conclusion.

Finally, NuVasive's reading of the order takes similar words and applies them

1 differently to its '236 patent as compared to Warsaw's '933 patent.  For the '236
2 patent, NuVasive argues that "infringing NIM-Eclipse nerve monitoring systems"
3 means the nerve monitoring equipment, plus unclaimed implants inserted when the
4 equipment was used in an accused manner.  (Ex. D.)  However, for the '933 patent,
5 NuVasive has taken the position that "MaXcess retractors" must be limited to solely
6 the retractors themselves, and not other items from which NuVasive receives revenues
7 when the retractors are used to infringe the '933 method claim.  *Id*.  There is no
8 support for the divergent and self-serving approaches that NuVasive seeks for the '236
9 and '933 patents, and no reason to vary from royalty bases used at trial.

## IV. CONCLUSION

For the foregoing reasons, Warsaw requests that the Court clarify that the ongoing royalty rates the Court determined for the '973 and '933 patents should be applied to the royalty bases for these patents used by Dr. Neels in his trial testimony as shown in PX2154, and the ongoing royalty rates determined for the '236 patent be applied to the royalty base used by Dr. Sullivan in his testimony regarding the '236 patent.

DATED:  July 8, 2013                    Respectfully submitted,


                                        */s/ Alexander F. MacKinnon*
                                        Luke L. Dauchot
                                        Alexander F. MacKinnon
                                        Nimalka R. Wickramasekera
                                        KIRKLAND & ELLIS LLP

                                        Attorneys for Plaintiff WARSAW
                                        ORTHOPEDIC, INC./Counterclaim Defendant
                                        MEDTRONIC SOFAMOR DANEK USA,
                                        INC.

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, Los Angeles, California 90071.

On July 8, 2013, true and correct copies of the foregoing document were served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

☒   FEDERAL:  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 8, 2013, in Los Angeles, California.

*/s/ Alexander F. MacKinnon*
Alexander F. MacKinnon